## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MICHELLE MAZIAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| | ) | NO. 1:21-cv-02172-SDG-CMS |
| v. | ) | |
| | ) | |
| CITY OF ATLANTA, GEORGIA; | ) | |
| CARMEN CHUBB and KEISHA | ) | |
| LANCE BOTTOMS, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT[1]

Plaintiff Michelle Maziar ("Plaintiff" or "Maziar") respectfully submits the following Second Amended Complaint against Defendants City of Atlanta, Georgia ("the City"), Carmen Chubb in her individual capacity, and Keisha Lance Bottoms in her individual capacity, showing the Court as follows:

---

[1] Plaintiff has made several substantive changes to the Amended Complaint (Doc. 18) as reflected in the following sections and paragraphs of this Second Amended Complaint: Introduction; ¶¶ 11–15, 19–24, 26–27, 34, 36, 40; and Prayer for Relief ¶ b).

**INTRODUCTION**

This is a case of race discrimination and retaliation.  At all times relevant to this dispute, Defendant City of Atlanta employed Maziar, a white woman, and paid her less than black employees occupying the same position and performing substantially similar work for the City.  When Maziar complained about this difference in pay and about certain City practices she believed violated the law, she was retaliated against, culminating in her termination.

Because of Defendants' unlawful discriminatory pay practices and Maziar's retaliatory termination, Maziar brings this suit asserting race discrimination claims under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1981, and Title VII, 42 U.S.C. § 2000e *et seq.*; retaliation claims under 42 U.S.C. § 1981 and Title VII; and a violation of the Georgia Whistleblower Act.  To remedy these civil rights violations, Maziar seeks injunctive and equitable relief, back pay and lost benefits, compensatory damages, and attorneys' fees and costs against all Defendants, and punitive damages against the individual Defendants.

**PARTIES**

1.      Plaintiff Michelle Maziar is a resident of Fulton County, Georgia and submits herself to the jurisdiction of this Court.  Maziar is a former employee of the City of Atlanta.

2.      The City of Atlanta, Georgia is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia. The City of Atlanta may be served with process by serving the Mayor at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

3.      Defendant Keisha Lance Bottoms serves as the Mayor for the City of Atlanta.  Defendant Carmen Chubb serves as the Chief of Staff for the Mayor for the City of Atlanta.  Upon information and belief, Bottoms is a resident of Fulton County and Chubb is a resident of Cobb County, thus both are subject to this Court's jurisdiction.  They may be served with process via personal service at their place of business, 55 Trinity Avenue SW # 1790, Atlanta, Georgia 30303.

**JURISDICTION AND VENUE**

4.      Maziar's claims under the Fourteenth Amendment and 42 U.S.C. § 1981, actionable under 42 U.S.C. § 1983, and her claims under Title VII present federal questions over which the Court has subject matter jurisdiction under 28

U.S.C. § 1331.  This Court has supplemental jurisdiction over Maziar's state law claim.

5.      Venue is proper in this district and division under 28 U.S.C. § 1391 because the City of Atlanta conducts business in this district and division and the unlawful actions and practices were committed within the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURES

6.      All conditions precedent to jurisdiction under Title VII have occurred or have been met.

7.      Maziar filed a timely charge of discrimination with the Equal Employment Opportunity Commission on December 21, 2020.

8.      The U.S. Department of Justice issued Maziar a "Notice of Right to Sue" on October 8, 2021, entitling Maziar to file a Title VII action within ninety (90) days of receipt of the notice.

9.      Maziar asserts her Title VII claims within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF FACTS

10.      Maziar is white.

11.    Maziar worked for the City of Atlanta as the Director of the Mayor's Office of Immigrant Affairs from May 2015 through May 6, 2021.

12.    There are approximately fifteen Executive Offices under the Office of the Mayor.  Such Executive Offices include, among others, the Mayor's Office of Communications, the Mayor's Office of Constituent Services, the Mayor's Office of Film & Entertainment, the Mayor's Office of Intergovernmental Affairs, the Mayor's Office of Television & Technology, and the Mayor's Office of Immigrant Affairs.

13.    Each Executive Office is charged with overseeing a discrete task or service on behalf of the City.

14.    Each Executive Office has at least one Director, all of whom are appointed or reappointed by Mayor Bottoms.

15.    All Directors are required to ensure that the Mayor's interests and priorities, as they relate to their Executive Office, are fulfilled.

16.    Directors are classified as Executive Directors or Directors with no regard to responsibility, experience, or seniority.

17.    For the vast majority of Maziar's tenure, all Directors reported to the Chief Operating Officer or the Chief of Staff, both of whom report to the Mayor.

18.    The vast majority of directors within the Mayor's Office are black.

19.    All Directors are compensated according to City-regulated pay grades. The Mayor has authority to set Directors' precise salaries within the individual's designated range.

20.    Upon information and belief, salaries of Director-level positions are reviewed and approved or adjusted annually by the Mayor or her designee.

21.    From the time Bottoms entered office until Maziar's termination, Maziar earned approximately $108,150 annually.

22.    Black Directors were compensated at a much higher rate than Maziar even though their employment with the City both in length and responsibility was comparable to or less than Maziar's.  These Directors include but are not limited to:

    a.    Philana Williams, the Co-Director of the Office of Film/Entertainment, who earned around $150,000 annually.  Williams is a black woman.  Williams was appointed Co-Director in or around July 2019.   Upon information and belief, Williams supervises three employees and she is a grade 29 employee.

    b.    Cardellia Hunter, the Co-Director of the Office of Film/Entertainment, who earned around $150,000 annually.  Hunter is a black woman.  Hunter was appointed Co-Director in or around July 2019.

Upon information and belief, Hunter supervises three employees and she is a grade 29 employee.

c.      Lanese Harris, the Director of the Office of Television & Technology, who earned around $145,000 annually.  Harris is a black woman.  Harris was appointed Director in or around February 2018.  Upon information and belief, Harris supervises four employees and she is a grade 31 employee.

d.      Curtis Bailey, the Executive Director of Constituent Services, who earned around $135,700 annually.  Bailey is a black man.  Bailey was permanentely appointed Executive Director of Constituent Services in or around June 2018.  Upon information and belief, Bailey supervises five employees and he is a grade 29 employee.

23.    Maziar was appointed Director in May 2015, she supervised seven employees, and she was a grade 30 employee.

24.    Williams, Hunter, Harris, and Bailey occupied comparable grades to Maziar, they had less time in the Director position, had less time with the City, and supervised fewer employees than Maziar, but all made around $30,000 to $50,000 more a year than Maziar.

25.     When Maziar noticed the disparity between her salary and black Directors' salaries, she met with her designated Human Resources representative in October 2018.

26.     Over the course of the next two years Maziar repeatedly complained to Human Resources that her salary was much lower than that of her Director-peers. Maziar's complaints were often dismissed or ignored.

27.     At least as of September 2020, Defendant Chubb was aware of Maziar's internal complaints regarding the above-mentioned salary disparity.

28.     Finally, in October 2020, after Maziar's repeated complaints and inquiries about the salary disparity, the City told Maziar that her salary would not be adjusted to that of her peers.

29.     Maziar filed a charge of discrimination with the EEOC on December 21, 2020 claiming that the disparate compensation was based on race.

30.     After Maziar's internal complaints and EEOC charge, Defendants retaliated against her by inserting two additional supervisors between her and Bottoms and Chubb.  Before filing her EEOC charge, Maziar had direct access to Mayor Bottoms and all senior members of the administration.  After filing her charge, Maziar was told she was no longer allowed to reach out to the Mayor, commissioners, or their deputies without prior authorization from Chubb or her new

supervisor.   This effective demotion forced Maziar to suffer a loss in prestige because she was the only director within the Mayor's Office subject to the restrictive communication rules and additional layers of supervision.

31.     Maziar amended her EEOC charge to include these retaliatory adverse actions on April 27, 2021.

32.     During this same time frame, Maziar's new supervisor, Qaadirah Abdur Rahim, on behalf of Chubb, directed Maziar to remove language she had included in a memorandum to Bottoms regarding the Asian Women Spa Murders.  In the memo, Maziar stated that the Atlanta Police Department ("APD") violated their standard operating procedure and federal law by not providing interpretation for the victims' families at the crime scene.  Rahim reprimanded Maziar verbally and in e-mails and threatened to cut off Maziar's communication to Bottoms if she told Bottoms about APD's illegal activity.

33.     Simultaneously, Maziar had informed senior City leadership and the United Way about other illegal activity as it related to the City's federally funded rental assistance program administered by United Way of Greater Atlanta. Specifically, Maziar was concerned about the City and United Way denying Limited English Proficient (LEP) residents equal access to the federally funded rental assistance program.  Maziar's last e-mail to United Way, sent the day before she was

9

terminated, specifically stated she had concerns that the City and United Way were violating federal law.

34.    Additionally, shortly before her termination, Maziar challenged the City's use of federal funds under the CARES and American Rescue Plan Acts, as it did not comply with United States Treasury Department guidelines.

35.    Maziar was terminated on May 6, 2021.  During her termination meeting, Maziar pressed the City for an explanation for her termination which was not provided.  Instead, Maziar was simply told that she was an "at will employee."

36.    Only Bottoms and Bottoms' designees, which include Chubb, had the authority to demote or terminate Maziar.  Upon information and belief, Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination.

37.    The unlawful, discriminatory, and retaliatory actions by the City of Atlanta and its agents and employees, including Bottoms and Chubb, were taken during and within the scope of their agency and employment with the City.

38.    Because of Defendants' unlawful, discriminatory, and retaliatory actions and practices, Maziar has suffered and continues to suffer emotional and resulting damages.

## GOVERNMENTAL AND DECISIONMAKER LIABILITY

39.     At all times material to this Complaint, it was clearly established law that a subjecting an employee to race discrimination in pay violates the Equal Protection Clause and § 1981.

40.     At all times material to this Complaint, it was clearly established law that a governmental employer may not retaliate against an employee because she opposes the employer engaging in race discrimination or other illegal activity.

41.     The individual Defendants were, at all times material to this Complaint, the highest Department officials with authority to hire, fire, transfer, demote, promote, discipline, and take personnel actions, including setting wages and salaries, affecting employees including Maziar.

42.     The individual Defendants' above-pled employment actions were not subject to, and did not require, higher review or approval.

## PUNITIVE DAMAGES

43.     The individual Defendants undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Maziar and her federally protected rights.

11

44.    Additionally, and in the alternative, the individual Defendants undertook all the above-pled conduct with reckless disregard for Maziar and her federally protected rights.

## COUNT I
## VIOLATION OF THE EQUAL PROTECTION CLAUSE
## RACE DISCRIMINATION
## (ALL DEFENDANTS)

45.    Plaintiff hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

46.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Maziar to equal protection under the laws, including equal protection with respect to race.

47.    No compelling or other governmental interest supports the Defendants' use of race as the basis for employment decisions giving rise to this complaint.

48.    To the extent any such interest existed, Defendants' use of race classifications is not the least restrictive means by which the Defendants could have effectuated such interest.

49.    Defendants violated Maziar's rights to equal protection by subjecting her to race discrimination.    The Defendants' conduct constitutes unlawful discrimination based upon race, in violation of the Equal Protection Clause.

12

50.     Defendants undertook all the unlawful conduct giving rise to Maziar's claims while acting under color of state law.

51.     As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Maziar has suffered damages including emotional distress, inconvenience, losses of income and benefits, humiliation, and other indignities.

52.     Defendants' unlawful conduct violated clearly established law prohibiting making compensation decisions based on race.

53.     Additionally, and in the alternative, Chubb and/or Bottoms undertook unlawful conduct recklessly with respect to Maziar and her federally protected rights, entitling Maziar to recover punitive damages against Defendants Chubb and Bottoms.

**COUNT II**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
**(ALL DEFENDANTS)**

54.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

55.     Defendants discriminated against Maziar as reflected in her compensation.

56.     Any reason proffered by Defendants for compensating Maziar differently than her comparators is pretext for racial discrimination.

13

57.    Defendants' pay practice violates 42 U.S.C. § 1981.

58.    Defendants willfully and wantonly disregarded Maziar's rights under § 1981 and acted in reckless disregard for Maziar's rights under § 1981.

59.    Defendants' discriminatory actions against Maziar were taken in bad faith.

60.    As a result of Defendants' discriminatory treatment, Maziar has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

61.    Pursuant to § 1981, Maziar is entitled to damages including, back pay and lost benefits, front pay, compensatory damages, punitive damages (against the individual Defendants), attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## COUNT III
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
## (ALL DEFENDANTS)

62.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

63.    Maziar engaged in protected activity under § 1981 by making internal complaints to Defendant City of Atlanta alleging racial discrimination.

64.     Defendants' actions in subjecting Maziar to retaliation for engaging in protected activity by complaining of, and opposing, race discrimination, constitute unlawful intentional retaliation in violation of § 1981.

65.     Defendants willfully and wantonly disregarded Maziar's rights, and Defendants' retaliation against Maziar was undertaken in bad faith.

66.     As a result of Defendants' unlawful actions, Maziar has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

67.     Pursuant to § 1981, Maziar is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages (against the individual Defendants), attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## COUNT IV
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
## (DEFENDANT CITY OF ATLANTA)

68.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

69.     Defendant City of Atlanta discriminated against Maziar as reflected in her compensation.

15

70.    Any reason proffered by Defendant for compensating Maziar differently than her comparators is pretext for racial discrimination.

71.    The City's pay practice violates Title VII.

72.    The City willfully and wantonly disregarded Maziar's rights under Title VII and acted in reckless disregard for her rights under Title VII.

73.    The City's discriminatory actions against Maziar were taken in bad faith.

74.    As a result of the City's discriminatory treatment of Maziar, she has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

75.    Pursuant to Title VII, Maziar is entitled to damages including, back pay and lost benefits, front pay, compensatory damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

### COUNT V
### RETALIATION IN VIOLATION OF TITLE VII
### (DEFENDANT CITY OF ATLANTA)

76.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

77.     Maziar engaged in protected activity under Title VII by making internal complaints to Defendants alleging racial discrimination.

78.     The City's actions in subjecting Maziar to retaliation for opposition and participation conduct of Title VII.

79.     The City willfully and wantonly disregarded Maziar's rights, and the City's retaliation against Maziar was undertaken in bad faith.

80.     As a result of the City's unlawful actions, Maziar has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

81.     Pursuant to Title VII, Maziar is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Title VII.

### COUNT VI
### VIOLATION OF O.C.G.A. § 45-1-4
### THE GEORGIA WHISTLEBLOWER ACT
### (DEFENDANT CITY OF ATLANTA)

82.     Based on the facts alleged above, Maziar asserts a claim under the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4.

83.     At all times relevant to this action, Defendant City of Atlanta was Maziar's employer.

84.     At all times relevant to this action, Defendnant City of Atlanta was a "public employer" as defined by O.C.G.A. § 45-1-4(a)(4).

85.     At all times relevant to this action, Maziar was a "public employee" as defined by O.C.G.A. § 45-1-4(a)(3).

86.     While employed with Defendant City of Atlanta, Maziar engaged in protected activity when she disclosed violations of laws, rules, or regulations to her supervisors and refused to participate in such violations.

87.     Defendant City of Atlanta took an adverse action against Maziar by demoting her and terminating her employment in retaliation for disclosing violations of laws, rules, and regulations to either a supervisor or a government agency.

88.     Additionally, or in the alternative, Defendant City of Atlanta took an adverse action against Maziar because she refused to participate in and objected to the City's activities, policies, and practices that she reasonably believed violated federal, state, and/or city laws, rules, or regulations.

89.     Defendant City of Atlanta violated the GWA by adopting or enforcing policies or practices preventing public employees from disclosing violations of laws, rules, and regulations to either a supervisor or a government agency.

90.     Instead of ensuring that the City complied with the GWA, the City actively sought to violate the Act.

91.     Defendant City of Atlanta's actions were willful, wanton, and intentionally directed to harm Maziar.

92.     Defendant City of Atlanta's actions were reckless and taken in willful disregard of the probable consequences of its actions.

93.     As a result of the City of Atlanta's conduct, Maziar has suffered lost wages and benefits, and other remuneration, damage to her professional reputation, and mental and emotional distress.

94.     Defendant City of Atlanta's actions and failures to act were the proximate cause of the harm suffered by Maziar as alleged herein.

## COUNT VII
## ATTORNEYS' FEES
## (DEFENDANT CITY OF ATLANTA)

95.     Based on the facts alleged above, Maziar asserts a claim for attorneys' fees.

96.     By its actions as more particularly described above, Defendant City of Atlanta has acted in bad faith, has been stubbornly litigious, and has put Maziar through unnecessary trouble and expense.

97.     Defendant City of Atlanta's willful, deliberate, and bad faith conduct subjects it to an award of attorneys' fees pursuant to O.C.G.A. § 13-6-11 and O.C.G.A. § 45-1-4(f).

19

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully invokes the powers of this Court and prays for the following:

a)    That the Court grant a trial by jury;

b)    That the Court grant Maziar judgment in her favor and against Defendants on all counts of this Complaint;

c)    That the Court permanently enjoin the City of Atlanta from discriminating or retaliating against Maziar on any basis forbidden by the Equal Protection Clause, 42 U.S.C. § 1981, Title VII, and the GWA;

d)    That the Court issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights to be free from discrimination and retaliation under the Equal Protection Clause, 42 U.S.C. § 1981, Title VII, and the GWA;

e)    That the Court grant Plaintiff all amounts available under the Equal Protection Clause, 42 U.S.C. § 1981, Title VII, and the GWA, including but not limited to: back pay, front pay, compensatory damages, damages for mental anguish, benefits, and all other damages allowed by law;

f)       That the Court award pre-judgment and post-judgment interest to Plaintiff on any of the above amounts;

g)       That the Court order Defendants to pay to all of Plaintiff's reasonable attorneys' fees and costs;

h)       That the Court grant Plaintiff punitive damages against the individual Defendants; and

i)       That the Court grant such other and further equitable and monetary relief as it deems equitable, just, and proper.

Respectfully submitted this on this 21st day of December 2021.

LEGARE, ATTWOOD & WOLFE, LLC

_s/ Eleanor Mixon Attwood_
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com

Decatur Town Center Two
125 Clairemont Ave, Ste. 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHELLE MAZIAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| | ) NO. 1:21-cv-02172-SDG-CMS |
| v. | ) |
| | ) |
| CITY OF ATLANTA, GEORGIA; | ) |
| CARMEN CHUBB and KEISHA | ) |
| LANCE BOTTOMS, | ) |
| in their individual capacities, | ) |
| | ) |
| Defendants. | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2021, I electronically filed the foregoing

**SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF

system, which will automatically send notice to the following counsel of record:

Natasha L. Wilson
Jacob Dean

                LEGARE, ATTWOOD & WOLFE, LLC

                *s/ Eleanor M. Attwood*
                Eleanor M. Attwood
                Georgia Bar No. 514014
                Counsel for Plaintiff