**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MICHELLE MAZIAR,

       Plaintiff,

v.

CITY OF ATLANTA, GEORGIA;
CARMEN CHUBB and KEISHA LANCE
BOTTOMS,
In their individual capacities,

       Defendants.

Case No. 1:21-cv-02172-SDG-CMS

## BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS

If ever a litigant had the direction and critiques necessary to adequately plead a viable claim, this is it. After filing not one, not two, but three complaints, after briefing two motions to dismiss, and after a nearly 90-minute hearing on the motion to dismiss, it is abundantly clear Plaintiff Michelle Maziar cannot plead a viable race discrimination claim. For if she could, surely, she would have done so after the Court explained in great detail allegations it considers necessary to state a race discrimination claim alleging discriminatory pay.

Despite being informed of the prior complaints' defects, Maziar makes little attempt to address them in any substantive way. What the Court said during the 90-

minute hearing is as true now as it was then: "I have no idea what [Plaintiff and her alleged comparators] do, what their tasks are. I mean, somebody's dealing with the TV. . . . [C]ould that be more different than the person dealing with immigrant affairs? They look, to me, like completely di[fferent] jobs." Transcript of Dec. 15, 2021 Hearing at 9:12-15. And the Second Amended Complaint omits facts that are well within Maziar's knowledge. At the December 15th hearing, the Court remarked that it had "no idea what [Maziar] does." *Id.* at 30:20. The Court continued, explaining that Maziar "has to [allege] that something she does is similar to what [the alleged comparators] do that would justify them being paid the same." *Id.* at 30:22-24.

The Court reiterated what additional facts it would consider supportive in its order permitting Maziar the opportunity to file a Second Amended Complaint. Given the importance of these directives, and Maziar's failure to address them, the Defendants quote verbatim from the Court's order:

> The amended complaint alleges that Plaintiff and the would-be comparators (1) occupy comparable grades, (2) have comparable or less time in their positions, (3) have comparable or less time with the City, and (4) supervised fewer employees. [Am. Cmplt. ¶ 18]. But noticeably absent from the amended complaint are allegations regarding the tasks that Plaintiff and the would-be comparators did on a daily basis or their relative skill sets. Indeed, their job titles sound quite different. (Plaintiff was the Director of Immigrant Affairs while her comparators were the Director of the Office of Film/Entertainment and the Director of the Office of Television & Technology). Nor are there any facts regarding anyone's respective responsibilities, educational backgrounds, professional backgrounds, career experience,

performance evaluations, supervisors, or disciplinary histories.  Nor
does Plaintiff make allegations about similarities between the
departments, such responsibilities, function, and/or budget.

Doc. 25 at 2 n.1.

## I.    ALLEGED FACTS

Maziar began her employment with the City in 2015.  Doc. 26 (Second Am.
Compl.) at ¶ 10-11.[1]  At the time of her termination on May 6, 2021, she held the
title of Director of Immigrant Affairs.  *See id.* at ¶ 11.  Maziar, who alleges she is
white, asserts that directors leading different departments with different missions
and with different titles earned $30,000 to $50,000 more a year than she did.  *Id.* at
¶ 24.  And she alleges the basis of the pay discrepancy is due to her race.  *See id.* at
¶ 55-61.

Of the directors—"[t]he vast majority [of whom] are [B]lack," *id.* at ¶ 18—
Maziar cites four directors/co-directors as comparators.  None of the alleged
comparators work in Maziar's department.  Fifty percent of the alleged comparators
do not direct—but rather co-direct—their respective departments.  And the would-
be comparators' departments could not be more dissimilar.  The titles of their
respective departments alone make it abundantly clear the departments they lead or
co-lead—Office of Film/Entertainment, Office of Television & Technology, Office

---

[1] Attached hereto as Exhibit A is a redline comparing the Amended Complaint (Doc.
18) with the Second Amended Complaint (Doc. 26).

of Constituent Services—perform *vastly* different functions than the department Maziar led—Immigrant Affairs.

Maziar met with a Human Resources representative in October 2018 after noticing the pay disparity. *Id.* at ¶ 25. She then filed her first charge with the Equal Employment Opportunity Commission ("EEOC") on December 21, 2020, claiming that the disparate compensation was based on race. *Id.* at ¶ 29. Maziar claims the City retaliated by placing greater supervision between her and Mayor Bottoms as a result of the EEOC filing. *Id.* at ¶ 30. Maziar claims that after she filed her first EEOC Charge, she "was told she was no longer allowed to reach out to the Mayor, commissioners, or their deputies without prior authorization from Chubb or her new supervisor." *Id.* at ¶ 30.

Around the time she filed her April 2021 amended EEOC Charge, Maziar was drafting a memorandum regarding the murder of Asian women at Atlanta-area spas. *Id.* at ¶ 32. In her memo, Maziar allegedly wrote that the "Atlanta Police Department ("APD") violated their standard operating procedure and federal law," for which she was reprimanded by her supervisor. *Id.* ¶ 32. Maziar also informed unnamed members of "City leadership" and the United Way about perceived illegal activities that were purportedly committed by the City and the United Way. *Id.* at ¶ 33.

Maziar's employment was terminated on May 6. *Id.* at ¶ 35. When Maziar sought an explanation from "the City," an unidentified person responded that she

was an at-will employee. *Id.* Maziar does not allege who specifically terminated her employment. *See generally id.* Upon the notoriously flimsy "information and belief" allegation, Maziar alleges that "Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination." *Id.* at ¶ 36.

## II.   STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court announced that Rule 8(a)(2) requires a complaint to contain enough factual content to state a claim "that is plausible on its face." 550 U.S. 544, 570 (2007). To state a facially plausible claim, a plaintiff must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For purposes of a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts as true all well pled factual allegations and construes the complaint in a light most favorable to the plaintiff. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, "a legal conclusion couched as a factual allegation" is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Stated differently, a

complaint must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   ANALYSIS

Maziar asserts seven claims in her Second Amended Complaint.  She names all three defendants—the City, Keisha Lance Bottoms, and Carmen Chubb—in Count I (race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause pursuant to 42 U.S.C. § 1983); Count II (race discrimination in violation of 42 U.S.C. § 1981); and Count III (retaliation in violation of § 1981). She names only the City in Counts IV and V (Title VII race discrimination and Title VII retaliation, respectively).  Likewise, she names the City as the only defendant in Counts VI (Georgia Whistleblower Act) and VII (attorneys' fees).  At issue in this motion are Counts I-IV.

**A. The Second Amended Complaint Fails to Plausibly Allege Race Discrimination Based on Disparate Pay, and All Claims Asserting Race Discrimination (Count I, II, and IV) Should Be Dismissed.**

In her Second Amended Complaint, Maziar purports to allege a violation of the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII.  All three concern the alleged discriminatory pay.

Maziar's Section 1981 claim and Equal Protection claim are duplicative.[2]

---

[2] It is therefore unnecessary for the Court to address the Equal Protection claim separately from the § 1981 discrimination claim. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

And "discrimination claims . . . brought under the Equal Protection Clause, [] § 1981, or Title VII . . . are subject to the same standards of proof and employ the same analytical framework . . . ." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). So, the Defendants address each discrimination claim simultaneously.[3]

Regardless of the claim, the law "requires that the differential treatment was motivated by an intent to discriminate." *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-00152-MLB-RGV, 2018 U.S. Dist. LEXIS 244055, at *65 (N.D. Ga. Jan. 28, 2021) (internal citations and punctuation omitted) *report and recommendation adopted as modified* No. 1:20-cv-152-MLB, 2021 U.S. Dist. LEXIS 126686, at *2 (N.D. Ga. Mar. 29, 2021). The Eleventh Circuit has made it clear that a plaintiff "must provide the necessary comparators in order to furnish discriminatory intent in the absence of direct evidence of discriminatory animosity toward a protected class." *Id.*, at *66. In *Lewis v. City of Union City*, the Eleventh Circuit clarified that an employee must be similarly situated to the plaintiff "in all material respects" to serve as a comparator for purposes of the *McDonnell Douglas* analysis. 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc). "[A] plaintiff and her

---

[3] *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."). Therefore, Maziar's Title VII race discrimination claim suffers from the same deficiencies as her Section 1981 claim.

comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. UPS*, 575 U.S. 206, 209 (2015)).

Maziar fails to allege any facts which might suggest that any differential treatment alleged was motivated by discriminatory intent. Moreover, she fails to provide adequate comparators by which to furnish such discriminatory intent. Maziar instead provides generic descriptions of purported comparators and states that they each "had less time in the Director position, had less time with the City, and supervised fewer employees" but all were better compensated. Doc. 26 at ¶¶ 22, 24.

In her Complaint, Maziar provides the names of several of the fifteen distinct Executive Offices which operate as separate departments within the Mayor's Office. *See id.* at ¶ 12 ("Such Executive Offices include, among others, the Mayor's Office of Communications, the Mayor's Office of Constituent Services, the Mayor's Office of Film & Entertainment, the Mayor's Office of Intergovernmental Affairs, the Mayor's Office of Television & Technology, and the Mayor's Office of Immigrant Affairs."). From the titles of these offices, and Maziar's deliberate decision to omit descriptions of the functions of the offices, it is clear that the "discrete task[s] or service[s]" each office performs are vastly different. Maziar does not even allege that these departments are similar to her former department.

Nor does she describe the duties or responsibilities of a Director, generally or specifically. Maziar fails to allege that these duties are the same—or even similar—for all directors. On the contrary, she alleges facts that underscore the differences between herself and her purported comparators, expressly alleging that "[e]ach Executive Office is charged with overseeing a discrete task or service on behalf of the City." *Id.* at ¶ 13.

None of the directors identified by Maziar work in the office in which Maziar was employed—the Office of Immigrant Affairs. Instead, these individuals work in other departments, each with a "discrete task or service" of its own. Philana Williams and Cardellia Hunter are Co-Directors of the Office of Film/Entertainment. *Id.* at ¶ 22. (Unsurprisingly, Williams and Hunter were paid the same salary as Co-Directors in the same office. *Id.*) Lanese Harris is the Director of the Office of Television & Technology, and Curtis Bailey is the Executive Director of Constituent Services. *Id.* Although each identified director is Black, their salaries differ depending on the office they lead. Nevertheless, Maziar insists that it is her race that was determinative of her compensation.

Maziar has failed to heed the Court's admonition. Maziar provides no information regarding the Directors' tenure in their respective fields prior to their employment with the City. In fact, Maziar does not even mention her own experience prior to her employment with the City. This is a significant omission as it fails to

address a meaningful element of an employee's qualifications. *See Jones v. Featherstone Homeowners Ass'n*, No. 5:20-cv-290-MTT, 2021 U.S. Dist. LEXIS 214209, at *6 (M.D. Ga. Nov. 5, 2021) (noting plaintiff failed to allege he possessed "equal experience" and "equal qualifications" with his would-be comparator and dismissing the complaint). An individual with one year of work experience, for instance, would certainly not be similarly situated to an individual with twenty years of work experience even if both individuals are hired simultaneously by a new employer.

Maziar also does not allege that she and her comparators have similar educational backgrounds, received similar performance evaluations, or performed similar tasks in their respective departments.  In fact, Maziar does not at all mention her own educational background, performance evaluations, or any specific responsibilities or tasks related to her former position.  She certainly makes no attempt to provide this information for any of her purported comparators.

Maziar's scant descriptions of her comparators plainly fail to demonstrate that any of them were similarly situated to her in all material respects.  Therefore, the proffered comparators cannot provide the necessary support for her race discrimination claims. *See Gilliam v. U.S. Dep't of Veterans Affairs*, 822 F. App'x 985 (11th Cir. 2020) (affirming motion to dismiss where offered comparator was not a valid comparator "similarly situated in all material respects").  This is especially

true where Maziar acknowledges her desired comparators led different departments. *See id.* at 991 (noting that a proffered comparator was too dissimilar from a plaintiff in part because they worked in a different department).

Despite multiple opportunities to describe the ways in which she is similarly situated to her purported comparators, Maziar has continued to assert insufficient allegations. Most telling is the fact that Maziar's omission disregards this Court's explicit directive. *See* Transcript of Dec. 15, 2021 Hearing at 30:22-24 ("THE COURT: [S]he has to tell me that something she does is similar to what they do that would justify them being paid the same.").

In short, Maziar fails to compare herself to her purported comparators by any metric other than race and salary. Maziar's failure to address other relevant variables undermines the plausibility of her discrimination claim leaving only a "'possibility' of racially-discriminatory animus," which is insufficient to support a claim of racial discrimination. *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1355-56 (N.D. Ga. 2017). And "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

Without valid comparators and an adequate level of comparison, Maziar's race discrimination claims remain "wholly conclusory, generalized, and non-specific" and

must be dismissed. *See Jones v. Unity Behavioral Health, LLC*, No. 20-14265, 2021 U.S. App. LEXIS 34835, at *9 (11th Cir. Nov. 23, 2021) (affirming dismissal of race discrimination claim where "[n]othing in the amended complaint indicate[d] that [the plaintiff's] alleged underpayment was connected to her race or national origin."); *Gilliam*, 822 Fed. App'x at 991 (finding that a comparator who was not "similarly situated in all material respects" to the plaintiff was treated differently than that comparator could not support an inference of discriminatory intent); *Arafat v. Sch. Bd.*, 549 F. App'x 872 (11th Cir. 2013) (dismissing plaintiff's claims on the grounds that "[s]he did not plead the facts comparing her skill, effort, and responsibility levels to those younger males who were allegedly paid more than her."); *see also Lewis*, 918 F.3d at 1222-23 ("Treating different cases differently is not discriminatory, let alone intentionally so.").

## B. The Individual Defendants Must Be Dismissed from Counts I, II, and III.

In addition to suing her actual employer—the City of Atlanta—Maziar names two individuals—the Mayor and Chubb—in the Equal Protection Claim, the Section 1981 discrimination claim, and the Section 1981 retaliation Claim.

A government employee may only be held liable in his or her individual capacity when a plaintiff establishes a causal connection between the alleged unlawful conduct and the alleged harm. *Dixon v. Burke Cnty, Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002). A "plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Rosa v. Fla. Dep't of Corr.*, 522 F. App'x 710, 714 (11th Cir. 2013). A defendant can be liable in her individual capacity if she is a final decisionmaker. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003) (explaining that a "decisionmaker" has the power to make official decisions and may therefore be held individually liable under Section 1983). Stated differently, one way to state an individual-capacity claim under Section 1983 is to allege that the defendant *personally* participated in the unlawful conduct or otherwise caused the alleged deprivation. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> 1. *Maziar's Allegations Do Not Plausibly Allege the Individual Defendants Discriminated Against Her Based on Her Race.*

Maziar fails to plausibly allege any involvement of the individual Defendants in her alleged discrimination.

As an initial matter, Chubb should be dismissed from Counts I and II. This Court recently cautioned Maziar that "[any amended complaint] must be clear which facts go with which claims against which defendants." Doc. 25 at 4 n.2. Maziar has specifically omitted Chubb when alluding to the person or individual who set her salary. Chubb must therefore be dismissed from Counts I and II. *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x. 81, 86 (11th Cir. 2008) ("In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant[.]" (internal quotation marks omitted)); *see*

*also Rosa*, 522 F. App'x at 714 (holding that a "plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution" (emphasis added)).

Although she asserts that the Mayor has "authority to set Directors' precise salaries" and that "[u]pon information and belief" these salaries are "reviewed and approved or adjusted annually by the Mayor or her designee," these conclusory allegations are insufficient to support her claims of intentional discrimination against a governmental official.  Doc. 26 at ¶ 19-20.  And, in fact, this conclusory allegation is inconsistent with the City's Charter and what Maziar should know routinely occurs by function of the City Council.  Section 3-301 of the City's Charter dictates that the compensation of any appointed officers or directors are set by the City Council.  ATLANTA, GA., CITY CHAR. § 3-301(f) (2021).  Specifically, it provides that "[t]he compensation of appointed officers and directors of departments shall be fixed by the council." *Id.*

The Eleventh Circuit has held that "for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely upon 'information and belief.'" *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)).  And "information and belief" allegations need not be relied on when "the allegations are conclusory

and there are no corresponding facts to support them." *Joseph v. Bd. of Regents*, No. 1:20-cv-502-TCB, 2020 U.S. Dist. LEXIS 208570, at *16 (N.D. Ga. May 8, 2020).

Despite being employed by the City for approximately six years, Maziar cleverly notes that the latter allegation relies upon "information and belief" rather than actual knowledge. It is implausible that after several years of employment, during many of which she purportedly complained about her compensation, Maziar would not know whether her salary was subject to annual review by the individual Defendants. This particular allegation is especially dubious given that Maziar asserts the fact that the Mayor has authority to set Director salaries with no such qualifier.

Maziar's allegations are further discredited by the factual timeline.

First, Maziar was hired as the Director of Immigrant Affairs in May 2015. Doc. 26 at ¶ 11. Second, Mayor Bottoms was not elected to serve as mayor until December 5, 2017 and not sworn in as mayor until January 2, 2018.[4] Prior to January 2, 2018, the office of Mayor was held by another occupant. Third, because Mayor Bottoms did not take office until 2018, it would have been impossible for her to appoint Chubb, her chief of staff, prior to 2018. Indeed, Mayor Bottoms did not appoint Chubb as her

---

[4] Defendants respectfully request that the Court take judicial notice of facts regarding the tenure of the individual Defendants as these facts are sufficiently well-known that they cannot reasonably be doubted. *See Ohio Bell Tel. Co. v. Comm'n*, 301 U.S. 292, 301 (1937) ("Courts take judicial notice of matters of common knowledge."); *see also Maxie v. St Joseph Cty.*, No. 3:19-CV-1172-PPS-MGG, 2020 U.S. Dist. LEXIS 50080, at *2 n.3 (N.D. Ind. Mar. 23, 2020) (taking judicial notice of when a sheriff's term commenced).

Chief of Staff until **February 2019**.  *See* Bryon Small, *Mayor Bottoms Names New Chief of Staff*, ATLANTA BUSINESS CHRONICLE (Feb. 5, 2019), https://www.bizjournals.com/atlanta/news/2019/02/05/mayor-bottoms-names-new-chief-of-staff.html.

Therefore, even if the Mayor possessed the authority to set Director salaries, the Mayor who would have exercised authority to set *Maziar's* salary in conjunction with her hiring was not Mayor Bottoms.  Taken together, these flaws demonstrate that neither individual Defendant would have had the opportunity to hire Maziar and set her salary at the time that she was hired by the City in 2015.  And, notably, Maziar does not allege either individual Defendant exercised this authority to actually set her salary in a discriminatory manner.

> 2. *The Second Amended Complaint Fails to State a Claim for Retaliation Under 42 U.S.C. § 1981 Against the Individual Defendants.*

To establish a prima facie case of retaliation under Section 1981, Maziar must allege that she (1) engaged in statutorily protected activity; (2) suffered a materially adverse action; and (3) the materially adverse action was caused by her engagement in the protected activity.  *See Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014).  To survive a motion to dismiss, a complaint must allege at least enough factual matter to suggest retaliation.  *Id.*

Maziar alleges two potential adverse actions to support the retaliation claim: Maziar's effective demotion and her ultimate termination. However, the Complaint contains no allegations that the individual Defendants had any involvement in either employment decision.

Here, there is no allegation that either of the individual Defendants participated in the alleged conduct that forms the basis of Maziar's retaliation claim. Maziar has not only failed to allege that the individual Defendants committed violations of her constitutional rights "acting under the color of state law," but she has failed to allege that the individual Defendants acted in *any* way.

On her *third* attempt, Maziar alleges merely that the individual Defendants possessed the authority to terminate her. Maziar does not, however, sufficiently allege that either individual Defendant exercised this authority. Instead, she includes a single conclusory allegation stating that "[u]pon information and belief, Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination." Doc. 26 at ¶ 36. Maziar does not assert a single fact regarding the source or nature of this information or belief. She simply inserts this bare allegation against the individual Defendants in a surreptitious attempt to maintain her unfounded claims against them. Maziar's assertion that "either or both" acted demonstrates that she has no knowledge regarding who actually made the decision to terminate her.

Instead, she simply attempts to bring claims against top-ranking City officials based on little more than a hunch.

Even accepting Maziar's allegations as true, the Second Amended Complaint merely demonstrates that the individual Defendants, among others, had the authority to terminate Maziar and that Maziar was terminated.  This, alone, is insufficient to plausibly state a claim against the individual Defendants.

Absent allegations of direct participation or a causal connection, Maziar's claims against the individual Defendants must be dismissed.  *Burnett v. Fulton Cty. Sch. Dist.*, No. 1:07-CV-0300-JTC-AJB, 2008 U.S. Dist. LEXIS 140107, at *17 (N.D. Ga. May 6, 2008) (finding plaintiffs failed to allege sufficient facts to hold individual defendant superintendent liable under Section 1983 for alleged discriminatory terminations), *report and recommendation adopted sub nom.  Burnett v. Fulton Cty. Bd. of Educ.*, No. 1:07-CV-0300-JTC-AJB, 2008 U.S. Dist. LEXIS 140107 (N.D. Ga. Aug. 28, 2008).  Here, there is no allegation that the individual Defendants participated in the alleged conduct forming the basis of Maziar's retaliation claim.  Therefore, Maziar has failed to state a claim of retaliation against the individual Defendants.

## C. The City Must Be Dismissed from Counts I and II Because Monell Liability is Absent.

To establish liability against a municipality under Section 1981, a plaintiff must assert recovery pursuant to Section 1983 via the Supreme Court's holding in

*Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Primarily, a plaintiff can show a municipality policy by (1) a policy statement, ordinance, regulation or decision officially adopted and promulgated; (2) an informal custom that was "so permanent and well settled" as to have "the force of law;" or (3) a decision by an official with final policymaking authority. *See Monell*, 436 U.S. at 690-91; *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). In the employment context, this liability may arise with regards to a final policymaker "provided that the decisionmaker 'possesse[d] final authority to establish municipality policy with respect to the action ordered.'" *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting *Pembaur,* 475 U.S. at 481). "'[S]tate and local positive law' determine whether a particular official has final policymaker authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (alteration in original) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Final policymaking authority will not vest if an official's decisions in that area are subject to "meaningful administrative review." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295 (11th Cir. 2000). Whether an official has final

policymaking authority on a particular issue is a question of law. *Jett*, 491 U.S. at 737.

Maziar's Complaint is devoid of any factual content that would allow the Court to impose municipal liability on the City with respect to the alleged disparate pay allegations (Counts I and II). Maziar fails to allege any factual circumstances that suggest actions were taken pursuant to an official policy of the City or an unofficial custom. Based on the Complaint, Maziar appears to proceed under the third option to establish *Monell* liability: final decisionmaker authority.[5] *See* Doc. 26 at ¶¶ 41-42. Maziar alleges that the Mayor has authority to set the Directors' salaries. *Id.* at ¶ 19. She also alleges—"[u]pon information and belief"—that the Mayor *or the Mayor's designee* reviewed and approved or adjusted the salaries. *Id.* at ¶ 20. But at no point does she allege that the Mayor actually set her salary or approved her salary.

---

[5] To the extent Maziar attempts to demonstrate *Monell* liability based on a custom or policy, that attempt fails. "Alleging vaguely that a policy, custom or practice exists is not enough; rather plaintiffs 'must specifically identify which policy or practice, if any, caused [the] alleged injuries.'" *Searcy v. Ben Hill Cty. Sch. Dist.*, 22 F. Supp. 3d 1333, 1341 (M.D. Ga. 2014) (citation omitted). Consistent with that principle, courts in this circuit routinely dismiss Section 1983 claims unaccompanied by facts establishing that a custom, policy, or practice of a government entity caused a deprivation of rights under federal law. *See Searcy*, 22 F. Supp. 3d at 1341; *Wise v. Cronic*, No. 2:12-CV-00291-RWS-JCF, 2013 U.S. Dist. LEXIS 99883, at *12 (N.D. Ga. June 14, 2013) (dismissing Section 1983 claim because it relied on a "bare, conclusory allegation" that a custom or policy existed).

Official policymaking power cannot vest in either individual Defendant as any alleged actions the individual Defendants took were subject to meaningful administrative review.  Section 3-301 of the City's Charter dictates that the compensation of any appointed officers or directors are set by the City Council. ATLANTA, GA., CITY CHAR. § 3-301(f) (2021).  It provides that "[t]he compensation of appointed officers and directors of departments shall be fixed by the council."  *Id.* Further, salaries of public employees are established by ordinance according to a pay plan system, consisting of a series of pay grades—these ordinances are subject to meaningful review by the Council and the Commissioner of Human Resources. Because neither individual Defendant can unilaterally act when it comes to fixing directors' salaries, official policymaker authority cannot be said to vest in the individual Defendants' actions.  Accordingly, Counts I and II against the City must be dismissed.

## IV.   **CONCLUSION**

For the reasons stated herein, Defendants request that the Court grant this Motion and dismiss Counts I, II, and IV for failure to state a claim.  Defendants further request that the Court dismiss Counts I, II, and III as alleged against the individual Defendants.

Respectfully submitted this 14th day of January, 2022.

*/s/ Natasha L. Wilson*
Natasha L. Wilson

21

Georgia Bar No. 371233
Marnishia Jernigan
Georgia Bar No. 228901
*Counsel for Defendants*

**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road NE
Atlanta, Georgia 30305
Tel:   (678) 553-2100
Fax:   (678) 553-2212

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1 C</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1 C.

*/s/ Natasha L. Wilson*
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the counsel of record:

Eleanor Mixon Attwood
LEGARE, ATTWOOD & WOLFF, LLC
Decatur Town Center Two
125 Clairmont Avenue, Ste. 380
Decatur, Georgia 30030

This 14th day of January, 2022.

/s/ *Natasha L. Wilson*
*Attorney for Defendants*