IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHELLE MAZIAR,
     Plaintiff,

v.

CITY OF ATLANTA, GEORGIA, et
al.,
     Defendants.

CIVIL ACTION NO.
1:21-cv-2172-SDG-CMS

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

Plaintiff Michelle Maziar ("Maziar" or "Plaintiff"), a former employee of the City of Atlanta, Georgia (the "City"), commenced this case against the City, Keisha Lance Bottoms, the former mayor of the City ("Bottoms" or "Mayor"), and her chief of staff, Carmen Chubb ("Chubb"), to challenge alleged unlawful pay practices and a retaliatory termination. Pending before the Court is Defendants' Partial Motion to Dismiss [Doc. 32], which seeks dismissal or partial dismissal of four of the seven claims in Maziar's Second Amended Complaint, including the following: (1) race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause pursuant to 42 U.S.C. § 1983 (Count I); (2) race discrimination in violation of 42 U.S.C. § 1981 (Count II); (3) retaliation in violation of 42 U.S.C. § 1981 (Count III) as alleged against Bottoms and Chubb; and (4) race discrimination in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") (Count IV). Maziar filed a response to the motion to dismiss, [Doc. 33], and Defendants filed a reply in support of the motion to dismiss, [Doc. 36]. For the reasons stated below, I will recommend that the motion to dismiss be granted.

## I.      PROCEDURAL BACKGROUND

Maziar filed her original complaint on May 25, 2021, alleging five claims: (1) race discrimination in violation of the Equal Protection Clause against all Defendants (Count I); (2) race discrimination in violation of 42 U.S.C.§ 1981 against all Defendants (Count II); (3) retaliation in violation of 42 U.S.C. § 1981 against all Defendants (Count III); (4) retaliation in violation of the Georgia Whistleblower Act against the City of Atlanta (Count IV); and (5) attorneys' fees under Georgia Code Sections 13-6-11 and 45-1-4(f) against the City (Count V). [Doc. 1, Compl.]. On July 26, 2021, Defendants moved the Court to partially dismiss the original complaint, requesting dismissal of Count I, Count II as alleged against the City, Count III as alleged against Bottoms and Chubb, as well as Maziar's request for punitive damages. [Doc. 8]. After receiving an extension of time for the briefing deadlines, Maziar filed a response to the motion to dismiss and declared an intent to seek leave to file an amended complaint to add Title VII claims upon issuance of a Notice of Right to Sue. [Doc. 12 at 1–2, 7, 17]. Shortly thereafter, the

parties consented to a stay of the proceedings until Maziar received the Notice of Right to Sue and filed a motion seeking leave to amend.  [Doc. 13].  I granted that consent motion.  [Doc. 14].

On October 27, 2021, Maziar filed a motion to amend her complaint to add Title VII claims and to remove any references to punitive damages against the City, and Maziar stated that Defendants consented to the motion.  [Doc. 15].  On October 28, 2021, I granted the motion, directed the Clerk to docket the amended complaint, and recommended that the district judge deny the motion to dismiss the original complaint without prejudice.  [Doc. 16].  The amended complaint included the following claims: (1) race discrimination in violation of the Equal Protection Clause against all Defendants (Count I); (2) race discrimination in violation of 42 U.S.C. § 1981 against all Defendants (Count II); (3) retaliation in violation of 42 U.S.C. § 1981 against all Defendants (Count III); (4) race discrimination in violation of Title VII against the City (Count IV); (5) retaliation in violation of Title VII against the City (Count V); (6) retaliation in violation of the Georgia Whistleblower Act against the City (Count VI); and (7) attorneys' fees under Georgia Code Sections 13-6-11 and 45-1-4(f) against the City (Count VII). [Doc. 18, Am. Compl.].

On November 11, 2021, Defendants filed a motion to partially dismiss the amended complaint. [Doc. 19]. Defendants sought dismissal of Counts I and II against the City and Counts I, II, and III as alleged against Bottoms and Chubb. [*Id.*]. In response to the motion to dismiss, Maziar asserted that the motion was due to be denied on every ground. [Doc. 20 at 2, 18]. She alternatively requested an opportunity to amend her amended complaint to cure any deficiencies found by the Court, since her prior amendments were limited to adding the Title VII claims. [*Id.* at 2 n.1, 18].

On December 15, 2021, after the parties fully briefed the motion to dismiss, I held a conference with the parties to discuss issues raised in the motion to dismiss and the parties' briefs. [Doc. 31, Hearing Tr.]. I expressed my concerns with the claims in the amended complaint, [*id.* at 3, 5–6, 8–10, 12–15, 18–20, 29–32, 56–57], and Plaintiff's counsel maintained that the amended complaint contained sufficient allegations to withstand the motion to dismiss, [*id.* at 7, 13, 17, 19–21, 23–24, 29–30, 32, 49, 61]. Nevertheless, Plaintiff's counsel reiterated the alternative request that Maziar be permitted to file a second amended complaint to address my concerns. [*Id.* at 55, 61–62]. After considering judicial economy and the issue that arises when a plaintiff seeks leave to amend after a report and recommendation has been issued, I decided to grant Maziar an opportunity to file a second amended complaint.

[Doc. 25].   Maziar did so, [Doc. 26], and I again issued a report and recommendation, this time recommending that the district judge deny Defendants' second motion to dismiss without prejudice, [Doc. 28].  The district judge adopted both reports and recommendations on February 4, 2022.  [Doc. 35].

In her Second Amended Complaint, Maziar alleges the same seven claims for relief that she alleged in her amended complaint.  *See* [Doc. 26, Second Am. Compl.].  However, she made substantive changes to the allegations, as reflected in the introduction, paragraphs 11–15, 19–24, 26–27, 34, 36, and 40, and the prayer for relief.   [*Id.*; Doc. 32-2].   Defendants now seek dismissal of Maziar's race discrimination claims brought pursuant to the Equal Protection Clause and 42 U.S.C. § 1981 (Counts I and II, respectively); her retaliation claim, as alleged against Bottoms and Chubb, under 42 U.S.C. § 1981 (Count III); and her Title VII race discrimination claim (Count IV).  The parties have fully briefed the motion to dismiss.

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory.   5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE &

PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the well-pleaded factual allegations therein as true.  *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  The plaintiff need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks, bracket, and citation omitted).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."

*Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

## III.   **FACTUAL BACKGROUND**

The following facts are recited for the purpose of resolving the motion to dismiss and are drawn from the allegations in Plaintiff's Second Amended Complaint, which I must accept as true and construe in the light most favorable to Maziar.

Maziar, a white woman, worked for the City as the Director of the Mayor's Office of Immigrant Affairs from May 2015 through May 6, 2021. [Second Am. Compl. ¶¶ 1, 10–11, 23]. Under the Office of the Mayor, there are approximately fifteen Executive Offices, and Maziar alleges that each one oversees a discrete task or service on behalf of the City. [*Id.* ¶¶ 12–13]. Each Executive Office has at least one Director, and the Mayor appoints or reappoints each one. [*Id.* ¶ 14]. According to the Second Amended Complaint, "Directors are classified as Executive Directors or Directors with no regard to responsibility, experience, or seniority." [*Id.* ¶ 16].

Maziar alleges that for most of her tenure, all Directors reported either to the Chief Executive Officer or the Chief of Staff, both of whom report to the Mayor. [Second Am. Compl. ¶ 17]. She alleges that Directors are compensated according to City-regulated pay grades and that the Mayor has authority to set the precise

salaries of the Directors within each individual's designated range.   [*Id.* ¶ 19]. Maziar alleges, upon information and belief, that the Mayor or her designee reviews and approves or adjusts the salaries of Director-level positions on an annual basis. [*Id.* ¶ 20].

Maziar alleges that from the time Bottoms entered office as Mayor until the time Maziar was terminated, Maziar's annual earnings were approximately $108,150. [Second Am. Compl. ¶ 21].  She was a grade 30 employee and supervised seven employees.   [*Id.* ¶ 23].

Maziar alleges that the vast majority of Directors within the Mayor's Office are black.   [Second Am. Compl. ¶ 18].   According to Maziar, black Directors received higher pay, although they had been employed with the City a comparable or fewer number of years than Maziar and had comparable or less responsibility. [*Id.* ¶¶ 22, 24].  Maziar identifies the following four black Directors or Co-Directors as alleged comparators:

- Philana Williams, a Co-Director of the Office of Film/Entertainment, who was appointed in July 2019, earned around $150,000 annually, and, upon information and belief, was a grade 29 employee with supervisory responsibility for three employees;

- Cardellia Hunter, a Co-Director of the Office of Film/Entertainment, who was appointed in July 2019, earned around $150,000 annually, and, upon information and belief, was a grade 29 employee with supervisory responsibility for three employees;

- Lanese Harris, the Director of the Office of Television & Technology, who was appointed in or around February 2018, earned around $145,000 annually, and, upon information and belief, was a grade 31 employee with supervisory responsibility for four employees; and

- Curtis Bailey, the Executive Director of Constituent Services, who was appointed in or around June 2018, earned around $135,700 annually, and, upon information and belief, was a grade 29 employee with supervisory responsibility for five employees.

[*Id.* ¶ 22].

After noticing the salary disparity, Maziar met with a Human Resources representative in October 2018 and repeatedly complained to Human Resources about the pay disparity for the next two years. [Second Am. Compl. ¶¶ 25–26]. Maziar alleges her "complaints were often dismissed or ignored." [*Id.* ¶ 26]. She alleges Chubb was aware of her complaints at least as of September 2020 and that

the City told Maziar in October 2020 that her salary would not be increased to be comparable to the salaries of the other Directors.  [*Id.* ¶¶ 27–28].

On December 21, 2020, Maziar filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") stating her belief that the disparate pay was based on race.  [Second Am. Compl. ¶ 29].  Maziar alleges that the City began to retaliate against her following her internal complaints and the filing of the EEOC Charge.  In this regard, Maziar alleges that she had direct access to the Mayor and all senior members of the administration before she filed the EEOC Charge.  [*Id.* ¶ 30].  After Maziar filed the charge, Defendants allegedly placed two additional supervisors between Maziar and the Mayor and Chubb.  [*Id.*].  Maziar alleges she suffered a loss in prestige after being directed not to reach out to the Mayor, the commissioners, or their deputies without receiving authorization from her supervisor or Chubb.  [*Id.*].  She alleges that this new rule and new layer of supervision applied only to her and no other Director.  [*Id.*]  On April 27, 2021, Maziar amended her EEOC charge to include these alleged retaliatory adverse actions.  [*Id.* ¶ 31].

Maziar alleges that she was working on a memorandum to the Mayor regarding the "Asian Women Spa Murders" around the same time that she amended her EEOC charge.  [Second Am. Compl. ¶ 32].  In the memo, Maziar alleged that

10

the Atlanta Police Department violated their standard operating procedure and federal law.  [*Id.*].  Maziar alleges that her supervisor, on behalf of Chubb, directed her to remove the information regarding the purported violations.  [*Id.*].  Maziar further alleges that her supervisor "reprimanded [her] verbally and in emails and threatened to cut off Maziar's communication to Bottoms if she told Bottoms about APD's illegal activity."  [*Id.*].

Maziar alleges that during the same time period, she informed senior City leadership and the United Way about activity she believed was illegal related to the City's federally funded rental assistance program administered by the United Way of Atlanta.  [Second Am. Compl. ¶ 33].  She was concerned that the City and United Way were violating federal law by denying Limited English Proficient ("LEP") residents equal access to the program, and she sent the United Way an email expressing this concern.  [*Id.*].

Maziar alleges that she likewise complained about the City's use of federal funds under the CARES and American Rescue Plan Acts.  [Second Am. Compl. ¶ 34].  Maziar did not believe the City's use complied with United States Treasury Department guidelines.  [*Id.*].

Maziar alleges she was terminated on May 6, 2021, which was the day after she sent her last email to United Way.  [Second Am. Compl. ¶¶ 33, 35].  Maziar

inquired about the reason for her termination and was told only that she was an "at will employee." [*Id.*].  According to Maziar, only the Mayor and her designees, which include Chubb, had the authority to demote or terminate her.  [*Id.* ¶ 36]. Maziar alleges, upon information and belief, that Bottoms or Chubb or both initiated and/or authorized her demotion and/or termination.  According to the Second Amended Complaint, Bottoms and Chubb "were . . . the highest Department officials with authority to hire, fire, transfer, demote, promote, discipline, and take personnel actions, including setting wages and salaries, affecting employees including Maziar.  [*Id.* ¶ 41].

IV.   **DISCUSSION**

Defendants move for partial dismissal of Plaintiff's Second Amended Complaint on three grounds.   First, Defendants argue that Maziar's race discrimination claims alleging violations of the Equal Protection Clause (Count I), 42 U.S.C. § 1981 (Count II), and Title VII (Count IV) must be dismissed because Maziar fails to plausibly allege race discrimination based on disparate pay.  [Doc. 32-1 at 6–12].  Second, Defendants argue that Counts I and II, as well as the Section 1981 retaliation claim (Count III), are subject to dismissal as to Bottoms and Chubb because Maziar has failed to plead facts demonstrating that they discriminated against her based on her race or that they were involved in either of the employment

12

decisions that Maziar claims were retaliatory.  [*Id.* at 12–18].  Finally, Defendants argue that the City must be dismissed from Counts I and II because Maziar has failed to plead facts that would support holding the City liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  [*Id.* at 18–21].  I will address each of these arguments separately.

### A.   Equal Protection Clause, Section 1981, and Title VII Race Discrimination Claims

Maziar alleges that Defendants discriminated against her on the basis of her race in violation of the Equal Protection Clause, Section 1981, and Title VII.  She alleges they did so by paying her a salary lower than the salaries paid to similarly situated black employees.   For the reasons explained below, Maziar's race discrimination claims are due to be dismissed.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976).  Likewise, Section 1981 protects an individual's right to be free from racial discrimination in the "making, performance, modification, and termination" of

13

contracts, including employment contracts.  42 U.S.C. § 1981.  *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1359 (M.D. Ala. 1999); *Gorman v. Roberts*, 909 F. Supp. 1493, 1498 (M.D. Ala. 1995).

Section 1983 is the conduit through which employees may bring Equal Protection Clause and Section 1981 claims against state actors. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 710–711, 731–736 (1989).  Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .  subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  Section 1983 does not itself create any substantive rights; rather, it merely provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "'The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate . . . discriminatory practices and devices' . . . used to disadvantage racial,

gender, and religious minorities in the workplace." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

Race discrimination claims brought pursuant to the Equal Protection Clause, Section 1981, and Title VII are all subject to the same legal analysis. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Rice–Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). All of the claims are analyzed under Title VII's framework. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). As such, Maziar and Defendants have addressed these claims simultaneously in their briefing, [Doc. 32-1 at 7; Doc. 33 at 8 n.3], and I will do the same.

A prima facie case of employment discrimination is established by facts showing that the plaintiff (1) is a member of a protected class, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated individual not in the protected class. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802). However, a plaintiff need not plead a *McDonnell Douglas prima facie* case to survive a motion to dismiss. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002) ("This court

has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) ("*McDonnell Douglas* [is] an *evidentiary* rather than a *pleading* standard . . . pleading a *McDonnell Douglas* prima facie case [is] not necessary to survive a motion to dismiss") (emphasis in original).

The correct inquiry at the motion to dismiss stage is whether the complaint provides "enough factual matter (taken as true) to suggest" intentional discrimination based on race. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks and citations omitted); *see also Gomez v. City of Doral¸* No. 21-11093, 2022 WL 19201, at *2 (11th Cir. Jan. 3, 2022) (reiterating that *McDonnell Douglas* does not apply in all employment discrimination cases and remanding sex discrimination claim to district court for consideration of the pleading's sufficiency using the *Iqbal/Twombly* plausibility standard). Thus, a race discrimination claim is not subject to dismissal just because the plaintiff fails to identify a proper comparator. *Gomez*, 2022 WL 19201, at *2. But, in the absence of other allegations suggesting intentional discrimination, a plaintiff may satisfy her burden at the pleading stage by alleging facts plausibly suggesting that her employer treated her less favorably than a similarly situated

individual not in her protected class.  *See Glover v. Donahue*, 626 F. App'x 926, 931 (11th Cir. 2015); *Adams v. Jefferson Cnty. Dep't of Health*, No. 2:17-cv-01772-JEO, 2018 WL 3819834, at *8 (N.D. Ala. Aug. 10, 2018).

Such "[d]isparate treatment can constitute illegal discrimination when 'an employer has treated a particular person less favorably than others because of a protected trait.'" *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).  It is not enough, however, to allege that the plaintiff was treated differently; a plaintiff must also allege facts to suggest intentional discrimination based on a protected trait.  *See Kavianpour v. Board of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-152-MLB-RGV, 2021 WL 2638999, at *21 (N.D. Ga. Jan. 28, 2021) (recommending dismissal of disparate treatment claims where the plaintiff alleged that she was treated differently but failed to allege facts showing that the defendants acted with discriminatory animus), *report and recommendation adopted as modified sub nom.*, 1:20-cv-152-MLB, 2021 WL 2635854 (N.D. Ga. Mar. 29, 2021).

Here, the sole basis in the Second Amended Complaint for Maziar's race discrimination claims is Defendants' alleged failure to pay her comparably to other

employees whom Maziar seeks to characterize as similarly situated.[1]  In this regard, Maziar alleges that black Directors received higher pay, although she and the other Directors were appointed or reappointed by Bottoms, generally reported to the same people,[2] occupied comparable City-regulated pay grades, and, upon information and belief, had their salaries set and reviewed by Bottoms or her designee.  [Second Am. Compl. ¶¶ 12–17, 19–20, 22–23].  She further alleges that the black Directors had been employed with the City a comparable or fewer number of years than she had and had comparable or less responsibility than she had, particularly with respect to the number of employees they each supervise or supervised.  [*Id.* ¶¶ 22–24].

The above allegations indicate that Maziar has endeavored to identify similarly situated comparators, but a close review of the other allegations in the Second Amended Complaint reveals deficiencies that are fatal to Maziar's race discrimination claims.  Maziar alleges in the introduction that she and the other Directors "perform[ed] substantially similar work for the City," [Second Am.

---

[1]    Maziar has not otherwise pled or even attempted to plead a "convincing mosaic" of circumstances that would raise an inference of unlawful discrimination. Maziar's allegations do not describe or imply any discriminatory intent or race-based animus.

[2]    All Directors reported to either the Chief Operating Officer or the Chief of Staff.  [Second Am. Compl. ¶ 17].

Compl., Introduction], but nowhere in the pleading does she support this conclusory allegation with basic facts regarding the nature of the work she and her alleged comparators performed. Maziar generally alleges that each Executive Office oversaw a "discrete task or service on behalf of the City." [Second Am. Compl. ¶ 13]. Contrary to showing or suggesting that the nature of the Directors' work was substantially similar, this allegation suggests that they each were responsible for very different things. Maziar also alleges that "Directors are classified as Executive Directors or Directors with no regard to responsibility, experience, or seniority." [*Id.* ¶ 16]. Rather than supporting a reasonable inference that individuals at the Director level are similarly situated and should be treated the same, this allegation suggests that individuals holding these titles could be as different as apples and oranges. Further, as I noted in my prior order and as Defendants argue in their brief, the specific titles of the positions (i.e., Director of the Mayor's Office of Immigrant Affairs, Co-Director of the Office of Film/Entertainment, Director of the Office of Television & Technology, and Executive Director of Constituent Services) similarly suggest that they are very different jobs. [Doc. 25 at 2 n.1; Doc. 32-1 at 3–4].

I recognize that job titles are not dispositive and that comparators do not have to be identical. *See Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir.1999). However, the distinct job titles and the above-mentioned

allegations suggesting that the Director-level status is not indicative of individuals having similar tasks, responsibilities, experience, and/or seniority make it even more important that the Court have before it alleged facts countering the reasonable inference that the difference in pay was based on differences in the nature of the Directors' work. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."). Maziar attempts to show that the Directors had comparable responsibilities by alleging that "[a]ll Directors are required to ensure that the Mayor's interests and priorities, as they relate to their Executive Office, are fulfilled." [*Id.* ¶ 15]. However, this allegation concerning their overall mission is too general to plausibly allege proper comparators, as Maziar seeks to do.

Simply put, the Second Amended Complaint is missing key allegations necessary to plausibly suggest that intentional race discrimination was the reason for the difference in compensation. There are no allegations concerning the respective job duties, day-to-day tasks, and required skills of Maziar and the other Directors. Notably, Maziar does not even allege facts describing her own work. Nor are there any factual allegations regarding the functions of and tasks performed by the

20

different Executive Offices each of the Directors led.  This is basic information that should be within Maziar's knowledge, given her approximately six years of employment with the City.[3]  While I can infer from the allegations in the Second Amended Complaint a possibility of misconduct, the pleading simply does not contain "enough factual material to raise a reasonable inference, and thus a plausible claim" that Defendants discriminated against Maziar on the basis of her race in violation of the Equal Protection Clause, Section 1981, and Title VII.  *Gomez*, 2022 WL 19201, at *2 (citation and internal quotation marks omitted).

To be clear, I am not making a substantive assessment that Maziar was not similarly situated to her alleged comparators.  That analysis would be more appropriately reserved for the summary judgment stage.  *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019) ("Determining whether a plaintiff and comparator are 'similarly situated in all material respects' is a fact-intensive inquiry better suited to summary judgment.").  It is possible that Maziar and the other Directors had similar job responsibilities and requirements and used comparable skills, notwithstanding the fact that they led different offices.  My

---

[3]        In contrast, I do believe Maziar would need discovery to compare her educational background, performance evaluations, and past experience to that of her alleged comparators.  I agree with Maziar that she need not allege specific facts regarding these matters at this early stage of the litigation.

finding in this Report and Recommendation is that Maziar has failed to sufficiently plead facts that *plausibly suggest* that she was similarly situated to the other Directors and that intentional discrimination was the reason for the disparate treatment.  As other courts have determined, this is a sufficient basis for dismissal of discrimination claims when no other plausible allegation of intentional discrimination has been made.  *See, e.g.*, *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872 (11th Cir. 2013) (affirming dismissal of plaintiff's disparate treatment claim under Title VII where the plaintiff "fail[ed] to show the existence of a similarly-situated employee" and "where no other plausible allegation of discrimination is present."); *Mallory v. Gartner, Inc.*, No: 2:21-cv-462-SPC-MRM, 2021 WL 3857652, at *3 (M.D. Fla. Aug. 30, 2021) (dismissing discrimination claims where the plaintiff did not "plausibly allege[ ] that any similarly situated employees were treated differently").

Given the absence of factual allegations plausibly alleging at least one proper comparator and the absence of factual allegations setting forth a "convincing mosaic" of circumstances that would raise an inference of unlawful discrimination, I will recommend that Maziar's race discrimination claims (Counts I, II, and IV) be **DISMISSED**.

**B.      Claims Against Bottoms and Chubb in Their Individual Capacities**

Maziar seeks to hold Bottoms and Chubb liable in their individual capacities for race discrimination in violation of the Equal Protection Clause (Count I) and Section 1981 (Count II) and for retaliation in violation of Section 1981 (Count III). I have already concluded that Counts I and II should be dismissed in their entirety against all Defendants for failure to state a claim upon which relief can be granted. However, because the district judge may disagree with my recommendation that those claims be dismissed for failure to plausibly allege a similarly situated comparator, I still will evaluate whether Maziar has otherwise stated viable claims in Counts I, II, and III against Bottoms and Chubb.

To prevail on a Section 1983 claim, the plaintiff must show that a person acting under color of state law deprived her of a federal right. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  Supervisory liability attaches only if the supervisor "personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."  *Bryant*, 575 F.3d at 1299 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *see also Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) ("It is well established in this

circuit that supervisory officials are not liable under Section 1983 for the unconstitutional acts of their subordinates" unless the "supervisor personally participates in the alleged constitutional violation" or "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.") (citation and internal marks omitted).

The requisite causal connection can be established (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (2) "where the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671. A "failure to stop" claim brought under a theory of supervisory liability "only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

### 1. Race Discrimination

As extensively discussed above, Maziar alleges in Counts I and II that she was discriminated against on the basis of her race when the City paid her less than black Directors. Maziar maintains that Bottoms and Chubb are liable in their individual capacities because "they paid similarly situated Black Directors far more than they paid her" and because they did not adjust her salary after she complained about the disparity. [Doc. 33 at 15–16]. Both theories of liability fail because they are not supported by the well-pleaded facts in the Second Amended Complaint.

As an initial matter, I will not consider any allegations that are based merely upon information and belief, as allegations founded on "information and belief" are not entitled to a presumption of truth at the pleading stage. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (noting that the court does "not have to take as true . . . allegations 'upon information and belief'"); *see also Smith v. City of Sumiton*, 578 F. App'x. 933, 935 n.4 (11th Cir. 2014) ("for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'").

Considering only the well-pleaded allegations and construing those allegations in the light most favorable to Maziar, as I must, there is no plausible legal basis for individual liability against Bottoms or Chubb. Maziar alleges that "[t]he

Mayor has authority to set Directors' precise salaries within the individual's designated range." [Second Am. Compl. ¶ 19]. Maziar further alleges, in a conclusory manner, that "[t]he individual Defendants were, at all times material to this Complaint, the highest Department officials with authority to hire, fire, transfer, demote, promote, discipline, and take personnel actions, including setting wages and salaries, affecting employees including Maziar." [*Id.* ¶ 41]. However, Maziar does not allege in the Second Amended Complaint that Bottoms or Chubb actually participated in setting or approving her salary or the salaries of the Directors to whom she compares herself.[4] *See generally* [Second Am. Compl.]. There simply is no plausible factual basis set forth in the Second Amended Complaint for her theory that Bottoms and Chubb were personally involved in paying the black Directors more than they paid her.

Maziar also seeks to hold Bottoms and Chubb liable in their individual capacities for not addressing the pay disparity after she complained, but Maziar does

---

[4] Defendants point out that Bottoms could not have set Maziar's salary because Maziar's employment as Director of the Mayor's Office of Immigrant Affairs began in May 2015 and Bottoms was not sworn in as mayor until January 2, 2018. [Doc. 32-1 at 15]. Maziar clarifies that her complaints concern the salaries set after Bottoms was sworn in. [Doc. 33 at 16]. Maziar also mentions that Bottoms reappointed her after she took office and "had the authority to adjust her salary upon reappointment and anytime thereafter." [*Id.*]. As I will explain *infra*, however, Maziar has not alleged that Bottoms was aware of any alleged salary disparity.

not sufficiently allege that either Bottoms or Chubb was aware of the alleged salary disparity or her complaints regarding the alleged disparity.  There are no allegations whatsoever that Bottoms was aware of Maziar's complaints.  *See generally* [Second Am. Compl.].  Maziar does allege that Chubb became aware of her internal complaints regarding the salary disparity at least as of September 2020.  [*Id.* ¶ 27].  However, Maziar offers no supporting factual allegations concerning the circumstances under which Chubb became aware of the complaints.  Notably, Maziar alleges that she made all of her complaints to Human Resources.  [*Id.* ¶¶ 25–26].  Maziar does not allege that she ever communicated with either Bottoms or Chubb about her salary or the salaries of the black Directors.  Maziar's general allegation that Chubb became aware of her complaints at least as of September 2020, which was almost two years after Maziar first complained, is too conclusory to be entitled to be assumed true.  *See Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018) ("An allegation that the defendants had some particular knowledge—without specific facts to support that allegation—can be conclusory and insufficient to establish a constitutional violation under § 1983.").

Maziar likewise does not allege that either Bottoms or Chubb made or communicated the decision not to adjust her salary to make it comparable to the salaries of the black Directors.  Rather, Maziar alleges that "the *City* told [her] that

her salary would not be adjusted to that of her peers." [*Id.* ¶ 28] (emphasis added). Maziar does not attribute this decision or statement to any particular person.

Relying on *Twombly*, Maziar argues in response to the motion to dismiss that she "need not *establish* that Bottoms and/or Chubb personally participated in or were supervisorily liable for discriminating against her" and that "she must merely allege sufficient facts to suggest it is plausible." [Doc. 33 at 16] (emphasis in original). Even viewing her allegations in a light most favorable to her, Maziar has not done the latter. Relying on *Creedle v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018), Maziar also argues that the court should allow her claims to proceed and be developed through discovery. But a plaintiff may not maintain an action by relying on "a wholly conclusory statement of claim . . . [that] le[aves] open the possibility that . . . [she] might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561 (internal marks omitted).

In sum, Maziar's allegations do not plausibly allege that Bottoms and/or Chubb personally participated in unlawful discriminatory acts, and Maziar's allegations are insufficient to draw the requisite causal connection to sustain a claim based on supervisory liability. In light of the foregoing, I will recommend that Maziar's Equal Protection Clause and Section 1981 race discrimination claims (Counts I and II) against Bottoms and Chubb in their individual capacities be

**DISMISSED**, even if the district judge determines that Maziar has otherwise properly stated race discrimination claims against the City.

   *2. Retaliation*

Maziar's retaliation claim against Bottoms and Chubb is similarly deficient. To establish a prima facie case of retaliation under Section 1981, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) the materially adverse action was caused by her engagement in the protected activity. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012); *Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014).

Here, Maziar alleges and argues that she was retaliated against when she was demoted and ultimately terminated. [Second Am. Compl. ¶¶ 30–31, 35; Doc. 33 at 17]. The alleged demotion relates to the additional layer of supervision that precluded her from having direct access to the Mayor and all senior members of the administration, and this alleged retaliatory action followed Maziar's filing of an EEOC charge. [Second Am. Compl. ¶¶ 29–30]. Maziar later was terminated shortly after she amended her EEOC charge and after she complained about certain practices of the City that she believed violated the law. [*Id.* ¶¶ 31–35].

Maziar generally alleges that "Defendants retaliated against her by inserting two additional supervisors between her and Bottoms and Chubb." [Second Am. Compl. ¶ 30]. She also alleges that after filing her EEOC charge, "[she] was told she was no longer allowed to reach out to the Mayor, commissioners, or their deputies without prior authorization from Chubb or her new supervisor." [*Id.*] Maziar does not identify who told her this, although the identity of this person should be within her knowledge.

Maziar also does not allege who made or communicated the termination decision. Instead, she simply alleges that "[she] was terminated on May 6, 2021." [Second Am. Compl. ¶ 35]. Maziar additionally alleges that she "pressed the City for an explanation for her termination" during her termination meeting, but she does not identify any of the persons who were present at the meeting and does not offer any specifics concerning whom she pressed for an explanation. [*Id.*].

In an effort to connect Bottoms and Chubb to the alleged demotion and termination, Maziar alleges that "[o]nly Bottoms and Bottoms' designees, which include Chubb, had the authority to demote or terminate [her]." [Second Am. Compl. ¶ 36]. However, this allegation leaves open the possibility that Bottoms had other designees with the authority to demote or terminate Maziar. Particularly since Maziar had two additional direct supervisors at the time of her termination, it is

possible that one of her direct supervisors made the decision to terminate. More importantly, Maziar does not specifically allege that either Bottoms or Chubb actually exercised their authority to demote or terminate her. Instead, in a conclusory and ambiguous manner, Maziar alleges, "[u]pon information and belief, Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination." [*Id.*]. Because Maziar does not back up this conclusory assertion with any factual allegations, I do not accept the assertion as true. *See Mann*, 713 F.3d at 1315.

The only reasonable inference I can draw from the well-pleaded allegations in the Second Amended Complaint is that it is possible that Bottoms and Chubb were involved in the decisions to demote and terminate Maziar. However, *Iqbal* and *Twombly* require that a claim be "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. "A facially plausible claim must allege facts that are more than merely possible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). Because Maziar has alleged only what Bottoms and Chubb, among others, are authorized to do and not what either of them actually did, I conclude that Maziar has not set forth "a plausible entitlement to relief" against Bottoms and Chubb in their individual capacities for retaliation. *Twombly*, 550 U.S. at 559. Accordingly, I will recommend that Maziar's

31

Section 1981 retaliation claim (Count III) be **DISMISSED** as to Bottoms and Chubb.

### C.    Municipal Liability

Defendants finally argue that the race discrimination claims under the Equal Protection Clause (Count I) and Section 1981 (Count II) must be dismissed against the City because the facts alleged in the Second Amended Complaint are insufficient to establish municipal liability.  For the reasons explained below, I agree and will recommend that these claims be dismissed against the City for this additional reason.[5]

In *Monell*, the Supreme Court held that a municipality or other local government may be subject to liability under Section 1983.  436 U.S. at 658, 691–92.  However, the Supreme Court "has placed strict limitations on municipal liability under § 1983."  *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  In order to

---

[5]    Again, I have already determined that these race discrimination claims are due to be dismissed based on Maziar's failure to plausibly identify a similarly situated comparator.

establish municipality liability under Section 1983, the alleged constitutional violations must result from: (1) an officially adopted and promulgated government policy; (2) an unofficial custom or practice of the municipality that is so pervasive and settled that it assumes the force of law; or (3) the actions of an official with final policymaking authority whose decision violated the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694; *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295 (11th Cir. 2000).

Here, Maziar appears to base *Monell* liability both on an unofficial custom or practice and on the actions of an official with final policy making authority. [Doc. 33 at 20–21]. Maziar first argues that *Monell* liability is present based on the alleged failure of the City to change or investigate the alleged race-based salary disparity that Maziar allegedly complained about for two years. [*Id.* at 21]. Maziar also alleges and maintains that the Mayor had the authority to set and change her salary; instead of the City changing her salary, however, Maziar alleges that the City began retaliating against her. [*Id.*]

To prove Section 1983 liability against a municipality based on custom, a plaintiff must "establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort*

*Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).   "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."  *Id.*  In cases alleging "inaction" by a municipality, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct.'"  *Griffin*, 261 F.3d at 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).   "A pattern of similar constitutional violations . . . is ordinarily necessary, because a single violation is not so pervasive as to amount to a custom." *Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 892–93 (11th Cir. 2016) (internal citations and marks omitted). "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted).

In the instant case, Maziar has not alleged that the City had a custom or policy of discriminating against white Directors.  Other than her own complaints about an alleged salary disparity, Maziar does not identify any similar instances of

discriminatory disparate pay.  The allegations are insufficient to establish a custom or practice to support a claim under *Monell*.

In the employment context, *Monell* liability may arise with regard to a final policymaker who is responsible for having approved or implemented an unconstitutional action, "provided that the decisionmaker 'possesse[d] *final authority* to establish *municipal policy* with respect to the action ordered.'"  *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis in original) (quoting *Pembaur*, 475 U.S. at 481).  "'[S]tate and local positive law' determine whether a particular official has final policymaker authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (alteration in original) (quoting *Jett*, 491 U.S. at 737).  Final policymaking authority will not vest if an official's decisions in that area are subject to "meaningful administrative review." *Oladeinde*, 230 F.3d at 1295.  Whether an official has final policymaking authority on a particular issue is a question of law.  *Jett*, 491 U.S. at 737; *Brown*, 923 F.2d at 1480.

The allegations in the Second Amended Complaint are insufficient to set forth a plausible claim that a final policymaker approved of the alleged unlawful actions against Maziar.  Maziar maintains that the Mayor was such a final policymaker with the authority to set and change the precise salary of a Director within City-regulated

pay grades.  As discussed previously, there are no well-pleaded factual allegations that the Mayor actually set or approved Maziar's salary or the salaries of her comparators.  Nor are there any allegations that the Mayor was aware of the alleged salary disparity or Maziar's complaints regarding the alleged salary disparity.  Thus, regardless of whether the Mayor had final policymaking authority, an issue that the parties also dispute and that I need not address, the Mayor is not alleged to have taken or approved any unconstitutional action and is not alleged to have had notice of any unconstitutional action that she failed to act upon.

Because Maziar has failed to state a plausible claim for municipal liability under Section 1983, I will recommend that the race discrimination claims against the City under the Equal Protection Clause (Count I) and Section 1981 (Count II) be **DISMISSED**.

V.   **CONCLUSION**

Based on the foregoing, I **RECOMMEND** that Defendants' Partial Motion to Dismiss [Doc. 32] be **GRANTED** in its entirety.  I **RECOMMEND** that the race discrimination claims under the Equal Protection Clause (Count I), 42 U.S.C. § 1981 (Count II), and Title VII (Count IV) be **DISMISSED with prejudice** as to all Defendants.  I **FURTHER RECOMMEND** that the retaliation claim under 42

36

U.S.C. § 1981 (Count III) be **DISMISSED with prejudice** as to Defendants Bottoms and Chubb.

If the district judge adopts this Report and Recommendation, the only claims remaining will be retaliation in violation of 42 U.S.C. § 1981 against the City (Count III), retaliation in violation of Title VII against the City (Count V), retaliation in violation of the Georgia Whistleblower Act against the City (Count VI), and attorneys' fees under Georgia Code Sections 13-6-11 and 45-1-4(f) against the City (Count VII).

**SO ORDERED**, this 17th day of May, 2022.

Catherine M. Salinas
United States Magistrate Judge