**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHELLE MAZIAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:21-cv-02172-SDG-CMS |
| CITY OF ATLANTA, GEORGIA, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S**
**NON-FINAL REPORT AND RECOMMENDATION**

Defendant City of Atlanta paid Plaintiff Michelle Maziar, a white woman, tens of thousands of dollars less than her black counterparts and when she complained about the difference in pay and about certain City practices she believed violated the law, she was retaliated against culminating in her termination. Defendants Keisha Lance Bottoms and Carmen Chubb had authority to set Maziar's and her counterparts' salaries, demote Maziar, and terminate her, thus she filed this suit alleging race discrimination claims under the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII; retaliation claims under 42 U.S.C. § 1981 and Title VII; and a violation of the Georgia Whistleblower Act. (*See* Doc. 26).

After Maziar filed her Second Amended Complaint, Defendants moved to dismiss four of Maziar's seven claims (Docs. 32, 32-1), and the Magistrate Judge's Report & Recommendation ("R&R") recommends granting Defendants' motion in full (Doc. 37).[1] In so doing, the Magistrate Judge erroneously disregards many of Maziar's well-pleaded allegations and imposes a seemingly heightened pleading standard better suited at the summary judgment stage. Maziar respectfully urges the Court to reject R&R's errors, deny Defendants' motion to dismiss, and allow her claims to proceed to discovery. *See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72.

## I.     FACTS RELEVANT TO PLAINTIFF'S OBJECTIONS

Maziar, a white woman, worked for the City of Atlanta ("the City") beginning in May 2015 as the Director of the Mayor's Office of Immigrant Affairs. (Doc. 26 (Second Am. Compl.) ¶¶ 10–11). The Office of Immigrant Affairs is one of approximately fifteen Executive Offices under the Office of the Mayor. (*Id*. ¶ 12). Each Executive Office is charged with overseeing a discrete task or service on behalf of the City. (*Id*. ¶ 13). Although the subject matter of the task or service varies across

---

[1] Defendants sought dismissal of Maziar's race discrimination claims brought under the Equal Protection Clause, 42 U.S.C. § 1981, and Title VII (Counts I, II, and IV) and her retaliation claim brought under Section 1981 against the individual defendants (Count III). (Doc. 32-1 at 6–12). Interestingly, Defendants did not initially move to dismiss Plaintiff's Title VII race discrimination claim. (*See* Doc. 19). It was added after the Magistrate Judge held a hearing on Defendants' Motion to Dismiss and suggested she would dismiss the claim if Defendants so moved.

each Executive Office, each Office and its Director(s) share a common mission: ensure that the Mayor's interests and priorities, as they relate to the Executive Office, are fulfilled. (*Id*. ¶¶ 12–15). Accordingly, all Executive Office Directors are appointed or reappointed by the Mayor, here, Mayor Bottoms. (*Id*. ¶ 14). And, for the vast majority of Maziar's tenure, all Directors reported to the Chief Operating Officer or the Chief of Staff, both of whom report to the Mayor. (*Id*. ¶ 17).

Within the City of Atlanta, Executive Office Directors are classified as Executive Directors or Directors without regard to responsibility, experience, or seniority. (*Id*. ¶ 16). All Directors are compensated according to City-regulated pay grades, but the Mayor has authority to set Directors' precise salaries within the individual's designated range. (*Id*. ¶ 19). Such salaries are reviewed and approved or adjusted annually by the Mayor or her designee. (*Id*. ¶ 20).

From the time Bottoms entered office until Maziar's termination, Maziar earned approximately $108,150 annually. (*Id*. ¶ 21). Around October 2018, Maziar noticed that she was being paid much less than black Directors of other Executive Offices, even though the Directors had less or comparable tenure with the City and supervised fewer employees than she did. (*Id*. ¶¶ 10, 22–25). These Directors include but are not limited to: (1) Philana Williams, the Co-Director of the Office of Film/Entertainment, who earned around $150,000 annually; (2) Cardellia Hunter,

3

the Co-Director of the Office of Film/Entertainment, who earned around $150,000 annually; (3) Lanese Harris, the Director of the Office of Television & Technology, who earned around $145,000 annually; and (4) Curtis Bailey, the Executive Director of Constituent Services, who earned around $135,700 annually. (*Id*. ¶ 22).

All four Directors occupied comparable grades to Maziar, had less time in the Director position and with the City than Maziar, and supervised fewer employees than Maziar. (*Id*. ¶ 24). Williams was appointed Co-Director in or around July 2019, she supervises three employees, and is a grade 29 employee; Hunter was appointed Co-Director in or around July 2019, she supervises three employees, and is a grade 29 employee; Harris was appointed Director around February 2018, she supervises four employees, and is a grade 31 employee; and Bailey was permanently placed as Director in or around June 2018, he supervises five employees, and is a grade 29 employee. (*Id*. ¶ 22). By contrast, Maziar was appointed Director in May 2015, she supervised seven employees, and she was a grade 30 employee, yet she made around $30,000 to $50,000 less a year than her black Director-peers. (*Id*. ¶ 24).

When Maziar noticed this disparity in pay, she met with her designated Human Resources representative. (*Id*. ¶ 25). Over the course of the next two years, Maziar repeatedly complained to Human Resources that her salary was much lower than that of other Directors, but her complaints were often dismissed or ignored. (*Id*.

¶ 26). Defendant Chubb was aware of Maziar's internal complaints at least as of September 2020. (*Id*. ¶ 27). In October 2020, after two years of repeated complaints and inquiries about the salary disparity, the City responded that Maziar's salary would not be adjusted to that of her peers. (*Id*. ¶¶ 25–26, 28).

Maziar filed a charge of discrimination with the EEOC on December 21, 2020 claiming that the disparate compensation was based on race. (*Id*. ¶ 29). After Maziar made internal complaints and filed an EEOC Charge, the City began retaliating against her by placing two additional supervisors between her and Bottoms and Chubb, effectively demoting her. (*Id*. ¶ 30). Before filing her charge, Maziar had a direct line to Bottoms and all senior members of the administration. (*Id*.). After filing her charge, Maziar was told she was no longer allowed to reach out to the Mayor, commissioners, or their deputies without prior authorization from Chubb or her new supervisor. (*Id*.). This effective demotion forced Maziar to suffer a loss in prestige because she was the only Executive Officer Director subject to these new, restrictive communication rules and layers of supervision. (*Id*.). Maziar amended her EEOC charge to include these retaliatory adverse actions on April 27, 2021. (*Id*. ¶ 31).

Maziar was terminated on May 6, 2021, nine days after she filed her amended EEOC charge. (*Id*. ¶ 35). During her termination meeting, Maziar pressed for an explanation for the termination which was not provided. (*Id*.). Only Bottoms and

Bottoms' designees, which include Chubb, had the authority to demote or terminate Maziar. (*Id*. ¶ 36).

## II.   STANDARD OF REVIEW

Upon receiving objections to an R&R, this Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). Where no objections are made, the Court reviews those portions of the R&R for clear error. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). After review, the Court may accept, reject, or modify the Magistrate Judge's findings and recommendations. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

A Court ruling on a motion to dismiss must view the complaint's allegations in the light most favorable to the plaintiff, consider the allegations as true, and accept all reasonable inferences therefrom. *Karantsalis v. City of Miami Springs, Fla*., 17 F.4th 1316, 1319 (11th Cir. 2021). The Court must deny a motion to dismiss if the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Under Rule 8(a)(2), a complaint need only contain "a short a plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, a complaint may survive a motion to dismiss even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

## III.   PLAINTIFF'S OBJECTIONS TO THE R&R

### A. The R&R improperly holds Maziar to an unreasonably high pleading standard in recommending dismissal of her race discrimination claims.

Maziar identifies <u>four</u> comparators to support her race discrimination claims,[2] (*see* Doc. 26 ¶¶ 12–24) yet the R&R concludes she failed to plead facts that plausibly suggest she was similarly situated to her proffered comparators and recommends

---

[2] The R&R and the parties addressed together Maziar's Equal Protection Clause, Section 1981, and Title VII race discrimination claims, as all are subject to the same legal analysis. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); (Doc. 32-1 at 6–7; Doc. 33 at 8 n.3; Doc. 37 at 15).

dismissal of all her race discrimination claims (Doc. 37 at 18–22).[3] In so doing, the R&R improperly demands that Maziar list detailed facts outside of her knowledge in order to survive Defendants' motion to dismiss. This Court should reject the R&R's attempt to hold Maziar (and future employment discrimination plaintiffs) to an unreasonably high pleading standard and allow her race discrimination claims to proceed.

To ultimately prevail on a race discrimination claim, a plaintiff must prove that she (1) is a member of a protected class, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated individual outside her protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, "a plaintiff's complaint 'need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case' to survive a motion to dismiss." *Gomez v. City of Doral*, No. 21-11093, 2022 U.S. App. LEXIS 85, *5 (11th Cir. Jan. 3, 2022) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)). Instead, a complaint "must merely provide enough factual material to raise a reasonable inference, and

---

[3] Maziar addresses the R&R's specific analysis regarding her race discrimination claims against Bottoms and Chubb below at pp. 14–18 and her Section 1983 claim against the City at pp. 21–22.

thus a plausible claim," that her employer engaged in race discrimination. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010).

At this early stage, Maziar has provided sufficient facts to support her race discrimination claims. Maziar names four comparators who were paid tens of thousands of dollars more than she was: (1) Philana Williams, the Co-Director of the Office of Film/Entertainment, (2) Cardellia Hunter, the Co-Director of the Office of Film/Entertainment, (3) Lanese Harris, the Director of the Office of Television & Technology, and (4) Curtis Bailey, the Executive Director of Constituent Services, all of whom are black. (Doc. 26 ¶ 22). Like Maziar, each person led one of the approximately fifteen Executive Offices under the Office of the Mayor. (*Id.* ¶ 12). True, the Offices had different missions, but Maziar and all four comparators were the senior-most administration officials within their Executive Offices and all had the same directive: ensure the Mayor's priorities with respect to their respective Offices were fulfilled. (*Id.* ¶¶ 13, 15). Additionally, Maziar alleged that all five held the same title, occupied comparable pay grades, were appointed or reappointed by Bottoms directly, and, before Defendants began retaliating against Maziar, reported to the same people.[4] (*Id.* ¶¶ 13–17, 22). Further, Maziar supervised more employees

---

[4] The R&R mistakenly reads Maziar's allegation that "Directors are classified as Executive Directors or Directors with no regard to responsibility, experience, or seniority," to suggest that "individuals at the Director level could be as different as

and had a longer tenure with City than her comparators (*id.* ¶¶ 22–24), so those factors could not serve as the basis for the pay disparity. These allegations allow a reasonable inference that Maziar's proffered comparators are similarly situated to her, which is all that is required at this point. *See Reid v. Wolf*, No. 1:20-cv-1235, 2021 U.S. Dist. LEXIS 138160, at \*17 (N.D. Ga. Jan. 7, 2021), *report and recommendation adopted* No. 1:20-cv-1235, 2021 U.S. Dist. LEXIS 128662 (N.D. Ga. Jan. 25, 2021).

Under Rule 8(a)'s permissive pleading standard, Maziar's allegations regarding her proffered comparators are more than sufficient to support her race discrimination claims. *See, e.g.*, *Winstead v. Lafayette County Bd. of Cnty. Comm'r*, 197 F. Supp. 3d 1334, 1339 (N.D. Fla. 2016) ("[E]ven after *Twombly* and *Iqbal*, Rule 8(a) is a permissive rule . . . . All Plaintiffs need to do is allege enough factual information to give fair notice to [Defendant] as to what Plaintiffs' claim is, and what events the claim pertains to."). The R&R erroneously concludes otherwise

---

apples and oranges." (Doc. 37 at 19 (quoting Doc. 26 ¶ 16)). To be clear, Maziar sought to convey that **the titles "Executive Director" and "Director" are equivalent** (i.e., an "Executive Director" is not senior or junior to a "Director"). In no way did Maziar mean to imply that those in the Director and Executive Director roles could have widely varying responsibilities, experience, and seniority. Read the way Maziar intended, her allegation here bolsters, not weakens, her argument, as one of her proffered comparators, Bailey, is an Executive Director (i.e., a Director).

because Maziar included no allegations concerning her comparators' "respective job duties, day-to-day tasks, and required skills." (Doc. 37 at 20). Notably, however, the R&R cites no authority requiring that a Plaintiff plead facts about comparators with that level of granular detail to survive a motion to dismiss. On the contrary, courts in this circuit have repeatedly held that a complaint need not contain such specific facts. *See, e.g.*, *Winstead*, 197 F. Supp. 3d at 1339 (concluding that plaintiffs alleged enough facts to survive dismissal even though they did not allege that similarly situated employees were treated more favorably and there was "little [in the complaint] to indicate that [Defendant's] actions were motivated by Plaintiffs' status as members of a protected class"); *Reid*, 2021 U.S. Dist. LEXIS 138160, at *14–*17 (rejecting defendant's argument that plaintiff failed to establish similarly situated comparators because he did not allege that they were subject to the same employment policies, had the same disciplinary history, reported to the same supervisor, or were also probationary employees, noting that a plaintiff "does not need to allege such specific facts to survive a motion to dismiss.").

The cases the R&R relies on for support involve plaintiffs who provided little to no factual allegations regarding their proffered comparators, and thus are distinguishable. (*See* Doc. 37 at 22). In *Arafat v. Sch. Bd. of Broward Cnty.*, the Eleventh Circuit affirmed the dismissal of a Title VII claim where plaintiff

"generically referenced younger males, but nowhere in her complaint [did] she identify any valid comparators." 549 F. App'x 872, 874 (11th Cir. 2013). Similarly, in *Mallory v. Gartner, Inc.*, the plaintiff provided only the following allegation regarding her comparators: "Defendant subjected Plaintiff to a more rigorous training program than her other non-Hispanic co-workers and refused to transfer [her] to a more suitable territory," and "[did] not allege how she and the proffered comparators were similarly situated." No. 2:23-cv-462, 2021 U.S. Dist. LEXIS 163499, at *7 (M.D. Fla. Aug. 30, 2021). By contrast, Maziar names four black Directors who occupied the same level within the Mayor's administration and who shared her title, mission, supervisors, and approximate pay grade. Maziar explains how she and her proffered comparators are similarly situated and her allegations are far more detailed than those in *Arafat* and *Mallory*; thus, those cases cannot justify barring her claims from proceeding.

The R&R states it is "not making a substantive assessment that Maziar was not similarly situated to her alleged comparators,"[5] but in practice it does just that, or worse. (Doc. 37 at 21). The Magistrate is not even affording Plaintiff the

---

[5] As the R&R correctly notes, such an assessment is reserved for summary judgment once the parties have had the opportunity to develop the facts. (Doc. 37 at 21 (citing *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019)).

opportunity to gather evidence so that a substantive assessment can be made. Instead, the R&R dismisses the detailed allegations Maziar provides about her proffered comparators and moves the goalpost to mandate she allege several additional facts, many of which are outside her knowledge. This Court should reject this troubling move. The R&R's requirement that a plaintiff detail the job duties, day-to-day tasks, and required skills of proffered comparators to survive a motion to dismiss is a particularly dangerous prospect for plaintiffs like Maziar who occupy department-head positions and do not interact with their comparators on a daily basis. *See, e.g.*, *Woodard v. Medseek, Inc.*, 178 F. Supp. 3d 118, 1198 n.13 (N.D. Ala. 2016) ("To require that each plaintiff find an identical comparator would effectively preclude any such action by a high-ranking employee . . . and would restrict the remedies of the equal pay legislation to those who work at less specialized jobs, such as assembly line workers or retail clerks."). Surely a Director of Pediatrics, for instance, could point to the Directors of Cardiology and Orthopedics as comparators in her complaint if all are responsible for managing their respective departments at the same hospital, report to the same person, manage about the same number of employees, and occupy similar pay grades. Just because the Director of Pediatrics may not know the Director of Cardiology's day-to-day duties at the complaint stage, that should not be a per se bar to her asserting a discrimination claim. The same is

true here. Maziar has put forth sufficient facts to suggest she and her proffered comparators are similarly situated. If it turns out, after discovery, that they all perform vastly different roles for the Mayor and those differences justify the pay differential, then the Court may dismiss her race discrimination claims at that time. But, that should not be permitted before discovery is conducted.

### B. The R&R improperly dismisses Maziar's claims against the individual defendants, as she provides sufficient facts to support those claims.

#### 1. Race discrimination

Maziar alleges race discrimination claims against Bottoms and Chubb under the Equal Protection Clause (Count I) and Section 1981 (Count II) because they paid her black counterparts far more than they paid her and failed to adjust her salary after she complained about the disparity.[6] A public official is liable for unlawful race discrimination if she either personally participated in the alleged discrimination or was supervisorily liable for it, meaning, there is a causal connection between the actions of the supervising official and the alleged conduct. *Doe v. Sch. Bd.*, 604 F.3d

---

[6] Before Plaintiff filed this lawsuit, the undersigned implored the City's representative to provider her with the correct decisionmaker if it was not Bottoms or Chubb. Defendant resisted and chose not to provide any correction once Plaintiff filed her initial Complaint. Although Defendants are not required to provide "free" discovery or make litigating easier for a plaintiff, a government defendant should be a better steward of taxpayer dollars than filing multiple motions to dismiss claims against individuals when it was presented with several opportunities to provide Plaintiff with the proper individual defendant(s).

1248, 1266 (11th Cir. 2010). A causal connection can be shown where a supervisor's policy or custom results in deliberate indifference to constitutional rights or "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). A "failure to stop" claim only requires that the supervisor (1) be able to prevent or discontinue a known constitutional violation by exercising her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Contrary to the R&R's conclusion, Maziar plausibly alleged that Bottoms and Chubb were personally liable for discriminating against her based on race.

Maziar's allegations, taken as true and viewed in the light most favorable to her, indicate that Bottoms and Chubb discriminated against her when they paid similarly situated black Directors far more than they paid her. (Doc. 26 ¶¶ 21–22). Maziar expressly alerted the City to this salary disparity, and Chubb, Bottoms' Chief of Staff, was aware of Maziar's complaints at least as of September 2020. (*Id.* ¶¶ 25–27). Additionally, in December 2020 Maziar filed an EEOC Charge against the Defendants asserting that the compensation disparity was based on race. (*Id.* ¶ 29).

15

The Mayor had the authority to set and change a Director's precise salary with his or her designated pay grade, and the Mayor and her designee, which includes Chubb, reviewed and approved Directors' salaries, so it is plausible that both were aware of and perpetuated (or at least did not end) the salary disparity. (*Id*. ¶¶ 19, 20).

Instead of crediting Maziar's well-pleaded allegations, the R&R disregards key facts, casts others as conclusory, and then summarily states it is implausible that Bottoms and Chubb were personally involved in paying the black Directors more than they paid her. (*See* Doc. 37 at 25–29). The R&R's first move to reach this conclusion is its erroneous assertion that allegations based on information and belief are "not entitled to a presumption of truth at the pleading stage." (*Id*. at 25). However, "pleading 'upon information and belief' does not give a court automatic permission to disregard the subsequent allegations; the inquiry remains the same— whether the allegations contain sufficient factual content, accepted as true, to state a claim for relief that is plausible on its face." *Pastore v. GT Mktg. Grp. USA*, No. 6:21-cv-1483, 2022 U.S. Dist. LEXIS 24319, at *6 (M.D. Fla. Feb. 10, 2022). Indeed, courts may credit allegations made "upon information and belief . . . where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability

16

plausible." *AAA Staffing, Ltd. v. Bomer*, No. 1:21-cv-01831, 2022 U.S. Dist. LEXIS 56361, at *13 (N.D. Ga. Mar. 28, 2022) (internal quotation marks omitted).

This Court should credit Maziar's allegation that, upon information and belief, Directors' salaries are reviewed and approved or adjusted by the Mayor (Bottoms) or her designee (Chubb), as it is based on facts that allow such an inference and this information is within Defendants' control. First, Maziar alleged that the Mayor (Bottoms) had the authority to set a Director's precise salary within his or her City-regulated pay grade; Bottoms appointed or reappointed each Director, including Maziar and her comparators; and Bottoms and Chubb had authority to take personnel actions regarding Maziar and other employees. (Doc. 26 ¶¶ 14, 19, 41). These allegations make it plausible to infer that Bottoms and her Chief of Staff periodically reviewed and adjusted the salaries of the Directors of her Executive Offices, some of the highest-ranking members of the Mayor's administration. Second, whether or not Bottoms and Chubb in fact did so is uniquely within Bottoms' and Chubb's knowledge. Thus, the Court should not summarily disregard this plausible allegation, and instead reject the Magistrate's refusal to view it as plausible.

The R&R also improperly faults Maziar for not specifically alleging that "Bottoms or Chubb *actually* participated in setting or approving" the salaries at issue or were *actually* aware of Maziar's complaints. (Doc. 37 at 26–27 (emphasis

17

added)). However, at this point, these facts are within Bottoms' and Chubb's knowledge, and Maziar's well-pleaded allegations suggest they are at least plausible.[7] *See Twombly*, 550 U.S. at 570. Again, in pertinent part, Maziar and her comparators were heads of the Mayor's Executive Offices; they reported to the Mayor's the Chief Operating Officer or the Chief of Staff, both of whom reported to the Mayor; the Mayor had authority to set their salaries; and upon information and belief, the Mayor periodically reviewed and adjusted their salaries. Further, Maziar made complaints to Human Resources for two years about the pay disparity and filed an EEOC charge alleging race discrimination based on the pay disparity. Based on these allegations, it is plausible that the Mayor and Chubb got wind of internal and external complaints coming from a Director of a Mayor's Executive Office.

This Court should reject the R&R's determination that Maziar put forth no plausible factual basis that Bottoms and Chubb were personally involved setting her and her comparators' salaries. As detailed above, Maziar alleged sufficient facts to raise such a plausible inference and thus that Bottoms and Chubb were personally involved in discriminating against her based on race; accordingly, this Court should allow these claims against the individual defendants to proceed.

---

[7] In fact, as Maziar alleged, she knows Chubb was aware of her complaints at least as of September 2020. (Doc. 26 ¶ 27).

## 2. *Retaliation*

A plaintiff establishes a prima facie case of retaliation under Section 1981 by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Chapter 7 Trustee v. Gate Gourmet, Inc*., 683 F.3d 1249, 1258 (11th Cir. 2012). However, a complaint need not establish a prima facie case of retaliation to survive a motion to dismiss; it need only allege facts that "possess enough heft" to set forth "a plausible entitlement to relief." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557, 559).

The R&R errs in concluding that Maziar failed to do so with respect to Bottoms and Chubb because her Second Amended Complaint does not contain sufficient allegations to suggest it is plausible that the two were involved in the decisions to demote or terminate her. (Doc. 37 at 29–32). Again, the R&R discounts Maziar's factual allegations to conclude her claim is merely "possible" and not "plausible." (*Id.* at 31). To recap: after Maziar filed an EEOC charge on December 21, 2020, her position underwent major changes within the following months. (Doc. 26 ¶¶ 29–30). Before filing her EEOC charge, Maziar had direct access to Bottoms; after filing her charge, Maziar was told she was no longer allowed to reach out to

her without prior authorization from Chubb or her new supervisor. (*Id.* ¶ 30). On April 27, 2021, Maziar amended her EEOC charge to include reference to the changes in her position. (*Id.* ¶ 31). Nine days after Maziar amended her charge, she was fired. (*Id.* ¶ 35). And as a high-ranking Director within the Mayor's office, only the Mayor or her designee, which included Chubb, had the authority to demote or terminate Maziar. (*Id.* ¶ 36); *see* City of Atlanta Code of Ordinances, Procedure for Imposing Disciplinary Action, Sec. 114-529(c)(2), (3) ("The appointing authority or designee may demote [and dismiss] an employee for cause . . . .").

Further, upon information and belief, Bottoms or Chubb either authorized or initiated Maziar's demotion and/or termination. (Doc. 26 ¶ 36). Contra the R&R, the Court should credit this allegation, as it is based on facts that allow such an inference and this information is within Defendants' control. *See AAA Staffing, Ltd.*, 2022 U.S. Dist. LEXIS 56361, at *13. Unlike the vast majority of City employees, Maziar was a high-ranking member of Bottoms' administration. Prior to her demotion, she reported directly to Chubb (who reported directly to Bottoms) and had direct access to Bottoms. (Doc. 26 ¶¶ 17, 30). Who other than Chubb and Bottoms—who had the authority to appoint, demote, and terminate her—could make the decision to demote her? How could anyone other than Bottoms and/or Chubb authorize the demotion and then termination of the Director of an Executive Office? Although Maziar now

does not know with certainty that either actually called for her demotion or termination, her allegations give rise to a reasonable inference that they did, which is enough to survive Defendants' motion to dismiss. *See Twombly*, 550 U.S at 556 (a plaintiff need only allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports her claim).

### C. The R&R erroneously concludes that Maziar failed to establish **Monell** liability sufficient to survive a motion to dismiss.

Under *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978), the City is liable under Section 1983 for constitutional violations resulting from: (1) an official government policy; (2) a custom or practice so pervasive and settled it assumes the force of law; or (3) the actions of an official fairly deemed to represent governmental policy. *Monell*, 436 U.S. at 694; *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295 (11th Cir. 2000). *Monell* liability may arise with regards to an employment decision, including a termination, "provided that the decisionmaker possesses *final authority* to establish *municipal policy* with respect to the action ordered." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2005) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Final policymaking will vest where an official's decision is insulated from administrative review. *See Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713–15 (11th Cir. 1992) (finding final policymaking

authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review").

Once more, the R&R concludes that Maziar's allegations are insufficient to support a plausible claim that a final policymaker—here, Mayor Bottoms— approved of the pay disparity Maziar experienced. (Doc. 37 at 32–36). The R&R is mistaken. Maziar alleged that Bottoms had the authority to set Maziar's and other Directors' salaries within the City-regulated pay grade and Bottoms reviewed and approved or adjusted such salaries. (Doc. 26 ¶¶ 19–20). Although Defendants have suggested that Directors' salaries are fixed by the City Council (*see* Doc. 32-1 at 20), the City's ordinances indicate that the Mayor "shall have authority" to hire department heads at the maximum salary within the designated range. City of Atlanta Code of Ordinances Sec. 114-125(b)(3). Specifically, "the mayor shall have authority to hire executive officers, department heads, deputies and equivalent up to the maximum assigned pay grade provided that prior to budget funding is allocated." *Id*. In this case, the pay differentials between Maziar and her proffered comparators plausibly fall within a single range and thus within the Mayor's control without further review.

Based on these allegations, Maziar has plausibly alleged that Bottoms had final policymaking authority with respect to her and her comparators' salaries, which

sufficient to give rise to reasonable inference that *Monell* liability is present. Thus, the Court should reject the R&R's contrary conclusion.

## IV.    CONCLUSION

For the foregoing reasons, Maziar respectfully requests that the Court sustain her objections to the R&R and deny Defendants' motion to dismiss.

Respectfully submitted this 7th day of June 2022.

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com
Marcela X. Johnson
Georgia Bar No. 328871
mxjohnson@law-llc.com

LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Fax: (470) 201-1212

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHELLE MAZIAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:21-cv-02172-SDG-CMS |
| CITY OF ATLANTA, GEORGIA, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 7th day of June 2022, I filed the foregoing **Plaintiff's Objections to Magistrate Judge's Non-Final Report and Recommendation** with the Clerk of Court using the Court's CM/ECF filing system which will send notification of such filing to all attorneys of record.

Natasha Wilson – wilsonn@gtlaw.com
Jacob Dean – deanj@gtlaw.com

*s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com

24