## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| MICHELLE MAZIAR, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-02172-SDG-CMS |
| CITY OF ATLANTA, GEORGIA; CARMEN CHUBB and KEISHA LANCE BOTTOMS, In their individual capacities, | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF MICHELLE MAZIAR'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF DEFENDANTS' PARTIAL MOTION TO DISMISS

After extensive and repeated briefing, the Report and Recommendation (Doc. 37) correctly recommended dismissal of Plaintiff Michelle Maziar's claims asserting race discrimination. It also correctly recommended dismissing the individual Defendants from the race discrimination and retaliation claims. This R&R followed not one, not two, but three complaints. And it occurred only after Defendants filed several Rule 12(b)(6) motions. The Magistrate Judge carefully considered Maziar's Second Amended Complaint and the adequacy of its allegations regarding the race discrimination claim and the individual Defendants. And the R&R correctly recommended granting Defendants' Partial Motion to Dismiss.

In her Second Amended Complaint, Maziar asserts several pay discrimination claims. Maziar, who is white, alleges the City paid her less than Black colleagues because of her race. Maziar also says she experienced retaliation because of her various complaints—complaints she says constitute protected activity. Besides suing her employer—the City—Maziar also sued the City's top elected official and her Chief of Staff, former Mayor Keshia Lance Bottoms and Carmen Chubb (the individual Defendants) in two of the counts alleging race discrimination and one of the counts alleging retaliation.

Following extensive and repeated briefing and a lengthy hearing, the R&R recommended dismissing Maziar's race discrimination claim. Among other deficiencies, Maziar did not support her allegations that alleged comparators were actually similarly situated with "with basic facts regarding the nature of the work she and her alleged comparators performed." R&R at 19. "[K]ey allegations," the Magistrate Judge found, such as job duties, skills, and tasks, were missing from the complaint. *Id.* at 20. The Second Amended Complaint conspicuously neglected to include any of those basic details.

And the R&R also concluded that even assuming Maziar had stated plausible race discrimination claims, the race discrimination claims as alleged against the individual Defendants were not plausible because Maziar did not allege either

official personally participated in setting her allegedly discriminatory salary. *Id.* at 26.

Maziar's retaliation claim against the individual Defendants fared no better. This is because, the Magistrate Judge held, Maziar did not allege either Bottoms or Chubb actually exercised their authority to demote or terminate her employment. Rather, Maziar alleged the individual Defendants possessed the authority to do so, which is insufficient. *Id.* at 30-31.

The Court should adopt the well-reasoned R&R and grant the City's Partial Motion to Dismiss. Adopting the R&R does not foreclose Maziar's ability to pursue the majority of claims alleged in the Second Amended Complaint. Maziar's Section 1981 and Title VII retaliation claims against the City, her Georgia Whistleblower Act claim against the City, and her derivative claim for attorneys' fees will proceed even if the Court fully adopts the R&R.

## I.     PROCEDURAL BACKGROUND

Maziar filed suit over a year ago—in May 2021. Doc. 1. After the parties sought and received a stay of litigation pending Maziar's receipt of a Right to Sue from the Department of Justice, she then filed an amended complaint. Doc. 18. The First Amended Complaint added Title VII claims. Defendants moved to dismiss some claims, but, in response, Maziar sought leave to amend her complaint if the

Court was inclined to grant Defendants' Partial Motion to Dismiss. *See* Doc. 23 at 2.

Following a 90-minute hearing on Defendants' Partial Motion to Dismiss Maziar's First Amended Complaint (which the parties fully briefed), the Court permitted Maziar another opportunity to correct the complaint's deficiencies. *See* Docs. 25, 31. During the hearing and in the subsequent order, the Magistrate Judge specified what additional facts would render the challenged claims plausible. *See* Doc. 25 at 2 n.1; *e.g.*, Transcript of Dec. 15, 2021 Hearing at 30:16-31:11; *see also* Doc. 32-1 at 2-3.[1]

But the Second Amended Complaint did little to address those concerns. As a result, the Magistrate Judge correctly dismissed those deficient claims. Doc. 37. A table depicting the dismissed claims and Defendants is presented below for ease of reference (with the strikethrough representing claims or defendants subject to dismissal pursuant to the R&R):

---

[1] Maziar accuses the City of being a poor "steward of taxpayer dollars" in seeking dismissal of her infirm claims, as well as dismissal of high-ranking government officials. Doc. 41 at 14 n.6. Far from being a poor steward of taxpayer dollars, concern for the public coffers lies at the heart of Defendants' Motion. A stated reason for naming public officials in their individual capacities is to extract more money—in the form of punitive damages—from the City. *See* Transcript of Dec. 15, 2021 Hearing at 41:18-21 (counsel explaining that "The reason you sue individual decisionmakers is because it gives you access to a punitive damages component that you don't otherwise have against the City . . . .").

| Counts | Defendants Named |
|---|---|
| ~~Count 1: 14th Amendment Equal Protection~~ | ~~City, Bottoms, Chubb~~ |
| ~~Count 2: Section 1981 Race Discrimination~~ | ~~City, Bottoms, Chubb~~ |
| Count 3: Section 1981 Retaliation | City, ~~Bottoms, Chubb~~ |
| ~~Count 4: Title VII Race Discrimination~~ | ~~City~~ |
| Count 5: Title VII Retaliation | City |
| Count 6: Retaliation in Violation of the Georgia Whistleblower Act | City |
| Count 7: Attorneys' Fees | City |

## II.     ALLEGED FACTS

Maziar started working for the City in 2015, about three or four years, respectively, before Bottoms and Chubb assumed office.  Doc. 26 at ¶¶ 10-11; *see* Bryon Small, *Mayor Bottoms Names New Chief of Staff*, ATLANTA BUSINESS CHRONICLE (Feb. 5, 2019), https://www.bizjournals.com/atlanta/news/2019/02/05/mayor-bottoms-names-new-chief-of-staff.html.[2]  At the time of her termination on May 6, 2021, she held the title of Director of Immigrant Affairs.  *See id.* at ¶ 11.  Maziar, who alleges she is white, asserts that directors leading different departments with different missions and with

---

[2] Defendants respectfully request that the Court take judicial notice of facts regarding the tenure of the individual Defendants as these facts are sufficiently well-known that they cannot reasonably be doubted.  *See Ohio Bell Tel. Co. v. Comm'n*, 301 U.S. 292, 301 (1937) ("Courts take judicial notice of matters of common knowledge."); *see also Maxie v. St Joseph Cnty.*, No. 3:19-CV-1172-PPS-MGG, 2020 U.S. Dist. LEXIS 50080, at *2 n.3 (N.D. Ind. Mar. 23, 2020) (taking judicial notice of when a sheriff's term began).

different titles earned $30,000 to $50,000 more a year than she did. *Id*. at ¶ 24. And she alleges the basis of the pay discrepancy is due to her race. *See id.* at ¶ 55-61.

Of the directors—"[t]he vast majority [of whom] are [B]lack," *id.* at ¶ 18— Maziar cites four directors/co-directors as comparators. None of the alleged comparators work in Maziar's department. Fifty percent of the alleged comparators do not direct—but rather co-direct—their respective departments. And the would-be comparators' departments could not be more dissimilar. The titles of their respective departments alone make it abundantly clear the departments they lead or co-lead—Office of Film/Entertainment, Office of Television & Technology, Office of Constituent Services—perform *vastly* different functions than the department Maziar led—Immigrant Affairs.

Maziar met with a Human Resources representative in October 2018 after noticing the pay disparity. *Id.* at ¶ 25. She then filed her first charge with the Equal Employment Opportunity Commission ("EEOC") on December 21, 2020, claiming that the disparate compensation was based on race. *Id.* at ¶ 29. Maziar claims the City retaliated by placing greater supervision between her and Mayor Bottoms as a result of the EEOC filing. *Id.* at ¶ 30. Maziar claims that after she filed her first EEOC Charge, she "was told she was no longer allowed to reach out to the Mayor, commissioners, or their deputies without prior authorization from Chubb or her new supervisor." *Id.* at ¶ 30.

Around the time she filed her April 2021 amended EEOC Charge, Maziar was drafting a memorandum regarding the murder of Asian women at Atlanta-area spas. *Id.* at ¶ 32. In her memo, Maziar allegedly wrote that the "Atlanta Police Department ("APD") violated their standard operating procedure and federal law," for which she was reprimanded by her supervisor. *Id*. ¶ 32. Maziar also informed unnamed members of "City leadership" and the United Way about perceived illegal activities that were purportedly committed by the City and the United Way. *Id.* at ¶ 33.

Maziar's employment was terminated on May 6. *Id.* at ¶ 35. When Maziar sought an explanation from "the City," an unidentified person responded that she was an at-will employee. *Id.* Maziar does not allege who specifically terminated her employment. *See generally id.* Upon the notoriously flimsy "information and belief" allegation, Maziar alleges that "Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination." *Id.* at ¶ 36.

## III. STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court announced that Rule 8(a)(2) requires a complaint to contain enough factual content to state a claim "that is plausible on its face." 550 U.S. 544, 570 (2007). To state a facially plausible claim, a plaintiff must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For purposes of a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts as true all well pled factual allegations and construes the complaint in a light most favorable to the plaintiff. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, "a legal conclusion couched as a factual allegation" is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Stated differently, a complaint must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV. THE COURT SHOULD GRANT DEFENDANTS' MOTION

### A. The Race Discrimination Claim Fails

The law "requires that the differential treatment was motivated by an intent to discriminate." *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-00152-MLB-RGV, 2018 U.S. Dist. LEXIS 244055, at *65 (N.D. Ga. Jan. 28, 2021) (internal citations and punctuation omitted) *report and recommendation adopted as modified* No. 1:20-cv-152-MLB, 2021 U.S. Dist. LEXIS 126686, at *2 (N.D. Ga. Mar. 29, 2021). The Eleventh Circuit has made it clear that a plaintiff "must provide the necessary comparators in order to furnish discriminatory intent in the absence of

direct evidence of discriminatory animosity toward a protected class." *Id.*, at \*66. In *Lewis v. City of Union City*, the Eleventh Circuit clarified that an employee must be similarly situated to the plaintiff "in all material respects" to serve as a comparator for purposes of the *McDonnell Douglas* analysis. 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc). "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. UPS*, 575 U.S. 206, 209 (2015)).[3]

Maziar identifies the names of several would-be comparators. Maziar attempts to show similarity by alleging that each would-be comparator fulfilled the Mayor's interests and priorities. Doc. 26 at ¶ 15. But she fails to allege what she does. Were her functions similar enough to the purported comparators such that the difference in pay suggests discrimination based on her race? The complaint does not say. Maziar does not describe the duties or responsibilities of a Director, generally or specifically. Maziar fails to allege that these duties are the same—or even similar— for all directors. On the contrary, she alleges facts that underscore the differences between herself and her purported comparators, expressly alleging that "[e]ach

---

[3] Defendants do not disagree that race discrimination claims need not allege facts sufficient to meet *McDonnell Douglas*' prima facie case standard. Plaintiffs must, however, "provide 'enough factual matter (taken as true) to suggest' intentional race discrimination.'" *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Executive Office is charged with overseeing a discrete task or service on behalf of the City." *Id.* at ¶ 13.

The absence of allegations is not the only factor compelling a finding that the race discrimination claims are not viable. "[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). Cutting against Maziar are the offices her would-be comparators lead. None of the directors identified by Maziar work in the office in which Maziar was employed—the Office of Immigrant Affairs. Instead, these individuals work in other departments, each with a "discrete task or service" of its own. Philana Williams and Cardellia Hunter are Co-Directors of the Office of Film/Entertainment. *Id.* at ¶ 22. (Unsurprisingly, Williams and Hunter were paid the same salary as Co-Directors in the same office. *Id.*) Lanese Harris is the Director of the Office of Television & Technology, and Curtis Bailey is the Executive Director of Constituent Services. *Id.* Although each identified director is Black, their salaries differ depending on the office they lead. As the R&R observed, the specific titles of these positions "suggest that they are very different jobs," R&R at 19—to say nothing of the differences in the departments' functions.

Courts routinely grant motions to dismiss based on inadequate facts about alleged comparators. *See Gilliam v. U.S. Dep't of Veterans Affairs*, 822 F. App'x 985 (11th Cir. 2020) (affirming motion to dismiss where offered comparator was not a valid comparator "similarly situated in all material respects"). In *Henley v. Turner Broad. Sys. Inc.*, for example, the court found that the plaintiff's allegations did "not plausibly allege purposeful race discrimination because there [was] insufficient information alleged to determine whether the employees identified as receiving . . . higher pay qualify as similarly situated comparators." 267 F. Supp. 3d 1341, 1355 (N.D. Ga. 2017) (quotation marks and citation omitted). The court specifically noted that the plaintiff failed to allege that "his comparators had similar levels of experience or education, had similar levels of seniority, or received similar performance evaluations." *Id.* (quotation marks and citations omitted). And in *Jones v. Featherstone Homeowners Ass'n*, the court noted that the plaintiff had not alleged that he and the purported comparator "had the same job duties, equal experience, equal qualifications, equal competency, or that they were alike whatsoever." No. 5:20-cv-290-MTT, 2021 U.S. Dist. LEXIS 214209, at *6 (M.D. Ga. Nov. 5, 2021). The court thus found that the plaintiff had not sufficiently alleged the existence of a similarly situated comparator. *Id.*, at *6-7. Both cases were decided at the motion to dismiss stage.

Without valid comparators and an adequate level of comparison, Maziar's race discrimination claims remain "wholly conclusory, generalized, and non-specific" and must be dismissed. *See Gilliam*, 822 Fed. App'x at 991 (finding that a comparator who was not "similarly situated in all material respects" to the plaintiff was treated differently than that comparator could not support an inference of discriminatory intent); *Arafat v. Sch. Bd.*, 549 F. App'x 872 (11th Cir. 2013) (dismissing plaintiff's claims because "[s]he did not plead the facts comparing her skill, effort, and responsibility levels to those younger males who were allegedly paid more than her."); *see also Lewis*, 918 F.3d at 1222-23 ("Treating different cases differently is not discriminatory, let alone intentionally so.").

Maziar worries the R&R portends trouble for future department-head litigants who assert pay discrimination claims. Doc. 41 at 13-14. She argues that a pediatrics director, for example, could identify a cardiology director as a proper comparator if both manage their respective departments; report to same person; supervise similar numbers of employees; and occupy a similar pay grade. *Id*. Under this theory nearly every department-head would be able to make out a plausible pay discrimination claim if the department-head noticed a salary disparity. The department head's actual duties would not matter.

The R&R correctly concluded that Maziar failed to allege basic facts—"job duties, day-to-day tasks, [] required skills" and even "facts describing her own

work." R&R at 20. This omission results in the absence of factual allegations plausibly alleging at least one proper comparator. *Id.* at 22.

### B. Even Assuming the Race Discrimination Claims Are Viable, the Individual Defendants Should Be Dismissed From Those Claims

Maziar did not confine the defendants named in her race discrimination claims to just her employer. In addition to suing the City, Maziar also named Bottoms and Chubb—both of whom assumed office *after* Maziar began. The R&R recommended dismissing the individual Defendants from Counts 1 and 2 irrespective of the substantive claim's merits because the complaint failed to adequately allege either individual Defendant was personally involved in setting Maziar's pay in a discriminatory fashion. That recommendation is correct.

The language of 42 U.S.C. § 1983 "requires proof of an affirmative causal connection between the official act or omission complained of and the alleged constitutional deprivation." *Bailey v. Bd. of County Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1124 (11th Cir. 1992). The Eleventh Circuit has held that the causation inquiry is "a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982). To sustain a Section 1983 individual liability action, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Wright v. Walmart*,

Civ. Action No. 1:19-cv-02580-SDG, 2020 U.S. Dist. LEXIS 155128, at *13 (N.D. Ga. Apr. 1, 2020) (quoting *Rosa v. Fla. Dep't of Corr.*, 522 F. App'x 710, 714 (11th Cir. 2013), for same proposition). A defendant can be liable in her individual capacity if she is a final decisionmaker. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326 (11th Cir. 2003) (explaining that a "decisionmaker" has the power to make official decisions and may therefore be held individually liable under Section 1983). Stated differently, one way to plead an individual-capacity claim under Section 1983 is to allege that the defendant *personally* participated in the unlawful conduct or otherwise caused the alleged deprivation. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

Maziar's race discrimination claims against the individual Defendants proceed under a theory that either Bottoms or Chubb possessed authority to set Maziar's salary. *See* Doc. 26 at ¶ 19 (alleging Mayor (but not Chubb) has authority to set directors' "precise salaries"); *id.* at ¶ 20 (alleging upon information and belief that Mayor or her unnamed designee "review[] and approve[]" directors' salaries annually); *id.* at ¶ 41 (alleging individual Defendants had authority to set wages and salaries).

Perhaps recognizing that possessing authority—without actually exercising it—is insufficient under Eleventh Circuit jurisprudence, Maziar mentions "failure to stop" liability, which is a species of supervisory liability. Doc. 41 at 15 (citing

*Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003) and *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003)).  This so-called "failure to stop" theory exists for plaintiffs unable to show personal participation in the alleged constitutional violation.  *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (observing Section 1983 claims may not be brought against supervisory officials on a theory of respondeat superior liability but that supervisors may be liable under Section 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." (quoting *Gonzalez*, 325 F.3d at 1234)).  Plaintiffs establish a causal connection in the context of failure to stop by alleging "facts which support an inference that the supervisor . . . knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762 (quoting *Gonzalez*, 325 F.3d at 1235).

Despite paying homage to "failure to stop" caselaw, however, Plaintiff doubles down on the personal participation theory: she says her allegations show the individual Defendants "discriminated against her when they paid similarly situated black Directors far more than they paid her," Doc. 41 at 15, not that they failed to stop subordinates from continuing the alleged constitutional deprivation.  So, it is evident from both the complaint and objection that Maziar seeks to hold the

individual Defendants liable due to their purported *personal* participation in Maziar's alleged unconstitutionally discriminatory pay.[4]

But Maziar fails to allege Bottoms and Chubb personally participated in her allegedly discriminatory pay. Although she asserts the Mayor has "authority to set Directors' precise salaries" and that "[u]pon information and belief" these salaries are "reviewed and approved or adjusted annually by the Mayor or her [unnamed] designee," these conclusory allegations are insufficient to support her claims of intentional discrimination against a governmental official. Doc. 26 at ¶¶ 19-20.

Take Chubb first.[5] Maziar alleges that "The Mayor has authority to set Directors' precise salaries within the individual's designated range," Doc. 26 at ¶ 19, and that "salaries of Director-level positions are reviewed and approved or adjusted annually by the Mayor or her designee," *id.* at ¶ 20. The closest Maziar comes to alleging Chubb's personal involvement with setting salary is paragraph 41. There, she alleges that "individual Defendants were, at all times material to this

---

[4] In Paragraph 27, Maziar alleges Chubb knew of Maziar's salary disparity. Of course, not all salary disparities are constitutional violations. Public employees are paid differently based on a host of reasons that have nothing to do with race. So, Chubb's knowledge that Maziar complained about her salary—and not necessarily that she complained that her pay violated the constitution—does not mean Chubb knew a subordinate would act unlawfully.

[5] Recall that, in the context of § 1983 liability, case law requires a focus on the responsibility of *each* defendant. *See Williams*, 689 F.2d at 1381. Instead of treating both individual Defendants the same, Defendants address the allegations against each defendant separately.

Complaint, the highest Department officials with authority to hire, fire, transfer, demote, promote, discipline, and take personnel actions, including setting wages and salaries, affecting employees including Maziar." *Id.* at ¶ 41. But possessing and exercising authority are two different things. *See McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 398 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded sub nom. McLaurin v. Falcone*, No. 05-4849-CV, 2007 WL 247728 (2d Cir. Jan. 25, 2007) ("The allegation that a named defendant merely had the right to control, without any allegation that defendant exerted such control is not sufficient to support a § 1983 action."). Proceeding under a theory of personal involvement, if Chubb never exercised authority to set Maziar's salary in a discriminatory matter, it cannot be said that she personally participated in the alleged constitutional deprivation. As one court explained,

> The mere authority to issue an adverse employment action is not enough to bring a claim against an individual, Plaintiff must allege facts specific to each Defendant's conduct that show the defendant's involvement in an adverse employment action, beyond a mere conclusory statement regarding that defendant's authority to effect an adverse employment action.

*Heintz v. Lawson*, No. 18-366, 2019 U.S. Dist. LEXIS 2958, at *20-21 (E.D. La. Jan. 7, 2019). To hold otherwise would subject thousands of public servants to lawsuits because the public servant is vested with authority to act.

So too for Bottoms. Maziar alleges that—upon information and belief— salaries of Director-level positions are reviewed and approved or adjusted annually

by the Mayor. Doc. 26 at ¶ 20. Maziar alleges that her salary remained the same "[f]rom the time Bottoms entered office until Maziar's termination . . . ." *Id.* at ¶ 21. So, Bottoms never acted with respect to Maziar's salary. And Maziar does not allege the Mayor was made aware of her pay-related complaints. As the R&R observed: "There are no allegations whatsoever that Bottoms was aware of Maziar's complaints." R&R at 27.

Maziar disagrees with the requirement that she allege personal involvement. *See* Doc. 41 at 17-18. She intimates that participation need not be pled. *Id.* On the contrary, causal connection (in this case personal involvement) is key. *See, e.g.*, *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."); *see also Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.").

Maziar also takes exception with the R&R's treatment of her allegations made upon information and belief. *See* Doc. 41 at 16-17. As a reminder, Maziar made several, critical allegations upon information and belief, including that the Mayor or the Mayor's designee "reviewed and approved" Director-level salaries. *Id.* at ¶ 20. Nothing obligates courts "to take as true allegations based merely 'upon information

and belief.'" *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)). And courts have declined to accept as true "information and belief" allegations that are conclusory and unsupported. *See Jones v. Unity Behavioral Health, LLC*, No. 20-14265, 2021 U.S. App. LEXIS 34835, at *10 n.1 (11th Cir. Nov. 23, 2021) (declining to accept as true allegation that an individual "was 'instrumental in Defendant's decision to terminate' the plaintiffs" because it was not backed up by factual allegations).

Maziar errs by arguing mere possession of authority to act or decide—as opposed to actually acting or deciding—is sufficient to sustain a claim against a public official in their individual capacity. The R&R correctly recommended that the individual Defendants be dismissed from the race discrimination claims.

### C. The Individual Defendants Should Be Dismissed From the Retaliation Claim

Maziar's retaliation claim against the individual Defendants warrants dismissal for the same reason. In Count 3, Maziar names all Defendants in a Section 1981 retaliation claim. And in Count 5, Maziar names the City in a Title VII retaliation claim. The Partial Motion to Dismiss sought dismissal of the individual Defendants from Count 3, and the R&R recommended dismissing the individual Defendants from that count, because Maziar never specifically alleges they utilized their alleged authority in these retaliatory incidents.

Maziar alleges two potential adverse actions to support the retaliation claim: Maziar's effective demotion and her ultimate termination. However, the complaint contains no well-pleaded allegations the individual Defendants had any involvement in either employment decision.

To establish a prima facie case of retaliation under Section 1981, Maziar must allege that she (1) engaged in statutorily protected activity; (2) suffered a materially adverse action; and (3) the materially adverse action was caused by her engagement in the protected activity. *See Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014). To survive a motion to dismiss, a complaint must allege at least enough factual matter to suggest retaliation. *Id.*

Here, there is no allegation that either individual Defendant participated in the alleged conduct that forms the basis of Maziar's retaliation claim. Maziar has not only failed to allege that the individual Defendants committed violations of her constitutional rights "acting under the color of state law," but she has failed to allege that the individual Defendants acted in *any* way.

Maziar alleges merely that the individual Defendants possessed the authority to terminate her. Maziar does not, however, sufficiently allege that either individual Defendant exercised this authority. Instead, she includes a single conclusory allegation stating that "[u]pon information and belief, Bottoms or Chubb or both initiated and/or authorized Maziar's demotion and/or termination." Doc. 26 at ¶ 36.

The R&R correctly declined to accept this assertion as true because Maziar did not support the conclusory allegation with any factual allegations. R&R at 31 (citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)). Maziar does not assert a single fact regarding the source or nature of this information or belief. She simply inserts this bare allegation against the individual Defendants in a surreptitious attempt to maintain her claims against them. Maziar's assertion that "either or both" acted demonstrates that she has no knowledge regarding who actually made the decision to terminate her.

Even accepting Maziar's allegations as true, the Second Amended Complaint merely demonstrates that the individual Defendants, *among others*, had the authority to terminate or demote Maziar. This, alone, is insufficient to plausibly state a claim against the individual Defendants.

Absent allegations of direct participation or a causal connection, Maziar's claims against the individual Defendants must be dismissed. *Burnett v. Fulton Cnty. Sch. Dist.*, No. 1:07-CV-0300-JTC-AJB, 2008 U.S. Dist. LEXIS 140107, at *47-48 (N.D. Ga. May 6, 2008) (finding plaintiffs failed to allege sufficient facts to hold individual defendant superintendent liable under Section 1983 for alleged discriminatory terminations where he signed off on list of terminated employees), *report and recommendation adopted sub nom. Burnett v. Fulton Cnty. Bd. of Educ.*, No. 1:07-CV-0300-JTC-AJB, 2008 U.S. Dist. LEXIS 140107 (N.D. Ga. Aug. 28,

2008). The R&R correctly concluded the complaint failed to allege personal involvement of the individual Defendants in Maziar's alleged retaliation. Therefore, Maziar has failed to state a claim of retaliation against the individual Defendants.

### D. *Monell* Liability Is Absent

To establish liability against a municipality under Section 1981, a plaintiff must assert recovery pursuant to Section 1983 via the Supreme Court's holding in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Primarily, a plaintiff can show a municipality policy by (1) a policy statement, ordinance, regulation or decision officially adopted and promulgated; (2) an informal custom that was "so permanent and well settled" as to have "the force of law;" or (3) a decision by an official with final policymaking authority. *See Monell*, 436 U.S. at 690-91; *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). In the employment context, this liability may arise with regards to a final policymaker "provided that the decisionmaker 'possesse[d] final authority to establish municipality policy with respect to the action ordered.'" *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting *Pembaur,* 475 U.S. at 481). "'[S]tate and local positive law' determine whether a particular official has final policymaker

authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (alteration in original) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  Final policymaking authority will not vest if an official's decisions in that area are subject to "meaningful administrative review." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295 (11th Cir. 2000).  Whether an official has final policymaking authority on a particular issue is a question of law. *Jett*, 491 U.S. at 737.

The complaint is devoid of any factual content that would allow the Court to impose municipal liability on the City with respect to the alleged disparate pay allegations (Counts I and II).  Maziar fails to allege any factual circumstances that suggest actions were taken pursuant to an official policy of the City or an unofficial custom.  Based on the complaint, Maziar appears to proceed under the third option to establish *Monell* liability: final decisionmaker authority. *See* Doc. 26 at ¶¶ 41-42. Maziar alleges that the Mayor has authority to set the Directors' salaries. *Id.* at ¶ 19. She also alleges—"[u]pon information and belief"—that the Mayor *or the Mayor's designee* reviewed and approved or adjusted the salaries. *Id.* at ¶ 20.  But at no point does she allege that the Mayor actually set her salary or approved her salary.

Official policymaking power cannot vest in either individual Defendant as any alleged actions the individual Defendants took were subject to meaningful administrative review.  Section 3-301 of the City's Charter dictates that the

compensation of any appointed officers or directors are set by the City Council. ATLANTA, GA., CITY CHAR. § 3-301(f) (2021). It provides that "[t]he compensation of appointed officers and directors of departments shall be fixed by the council." *Id.* Further, salaries of public employees are established by ordinance according to a pay plan system, consisting of a series of pay grades—these ordinances are subject to meaningful review by the Council and the Commissioner of Human Resources. Because neither individual Defendant can unilaterally act when it comes to fixing directors' salaries, official policymaker authority cannot be said to vest in the individual Defendants' actions.

Maziar argues at length that her allegations support a plausible finding that *Monell* liability is present. Doc. 41 at 22-23. However, Maziar fails to cite any case for the proposition that difference in pay differentials renders pay within the Mayor's control. The R&R correctly concluded that because of the absence of well-pleaded allegations that the Mayor actually set or approved Maziar's salary (for the reasons previously discussed), Maziar failed to adequately allege *Monell* liability. R&R at 35-36.

## V.    CONCLUSION

The R&R correctly (i) dismissed Maziar's race discrimination claims against all Defendants; (ii) held that the complaint failed to plead plausible race discrimination claims against the individual Defendants; and (iii) dismissed the

retaliation claim against the individual Defendants. Defendants ask this Court to reject Maziar's Objections to the R&R and grant Defendants' Partial Motion to Dismiss.

Respectfully submitted this 1st day of July, 2022.

/s/ Natasha L. Wilson
Natasha L. Wilson
Georgia Bar No. 371233
Jacob R. Dean
Georgia Bar No. 180545
*Counsel for Defendants*

**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road NE
Atlanta, Georgia 30305
Tel:   (678) 553-2100
Fax:   (678) 553-2212

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1 C

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1 C.

/s/ *Natasha L. Wilson*
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the counsel of record:

Eleanor Mixon Attwood
LEGARE, ATTWOOD & WOLFF, LLC
Decatur Town Center Two
125 Clairmont Avenue, Ste. 380
Decatur, Georgia 30030

This 1st day of July, 2022.

/s/ *Natasha L. Wilson*
*Attorney for Defendants*

*ACTIVE 65657654v5*