IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHELLE MAZIAR,<br>    Plaintiff,<br><br>              v.<br><br>THE CITY OF ATLANTA,<br>    Defendant. | Civil Action No.<br>1:21-cv-02172-SDG |

**OPINION AND ORDER**

This case is before the Court on Plaintiff Michelle Maziar's objections to United States Magistrate Judge Catherine M. Salinas's Order (the Order) denying spoliation sanctions [ECF 140] against Defendant, the City of Atlanta. After careful consideration and with the benefit of oral argument, undersigned **SUSTAINS IN PART and OVERRULES IN PART** Maziar's objections to the Order. Undersigned finds that at least two sanctions are appropriate in this case: **DENIAL** of the City's pending motion for summary judgment [ECF 108] and an award of attorneys' fees and costs for Maziar associated with prosecuting the sanctions motion.

**I.   Background**

Maziar was the Director of the Atlanta Mayor's Office of Immigration Affairs from May 2015 through early May 2021.[1] Maziar alleges that she was terminated in retaliation for various protected activities she conducted while in

---

[1]   ECF 125-1, ¶¶ 1, 30.

1

the City's employ.[2] Specifically, Maziar, who is white, claims she engaged in protected activity by first, lodging complaints about the disparity in pay between herself and her black co-directors and second, objecting to the City's failure to ensure that COVID-19 relief funds were distributed in compliance with federal law and the City's failure to abide by its own Limited English Proficiency policy.[3] The City claims it fired Maziar for legitimate non-retaliatory reasons—primarily her unprofessional behavior during a meeting attended by Maziar and some of her colleagues.[4] The City claims it terminated Maziar "[a]s a result" of her conduct during this meeting.[5] The City further identifies Qaadirah Abdur-Rahim, Maziar's then-supervisor, as the primary decision-maker with regard to Maziar's termination from employment.

### A. Relevant facts

Even before Maziar's employment had been terminated, her counsel sent the City a demand letter on November 24, 2020 that included a request for a litigation hold.[6] The letter asked the City to "preserve data and/or ESI . . . related

---

[2] ECF 1.

[3] ECF 125, at 3.

[4] ECF 108-1, at 1, 8.

[5] *Id.* at 8.

[6] ECF 115-5, at 2–4.

to all aspects of Ms. Maziar's employment."[7] The City failed to issue a litigation hold to Abdur-Rahim at that time. The meeting during which Maziar purportedly engaged in unprofessional behavior took place approximately five months later—on April 29, 2021. Maziar's employment was terminated on May 6. Only then, on May 10, did the City first issue a litigation hold to Abdur-Rahim.[8] Counsel for the City instructed Abdur-Rahim to "produce any messages related to Ms. Maziar related to [the April 29 meeting]."[9] No one searched Abdur-Rahim's personal or work phone independent of these instructions.

On May 25, 2021, Maziar filed suit, bringing claims of gender discrimination and retaliation.[10] The Court dismissed the discrimination claims but allowed the retaliation and whistleblower claims to proceed to discovery.[11]

Maziar then served her discovery requests on the City on November 21, 2022.[12] These requests included:

- All documents concerning Maziar's claims.
- All documents that support, negate, or relate to any claim, defense, or affirmative defense asserted in this lawsuit.

---

[7] *Id.* at 3.

[8] ECF 121-1, at 2.

[9] ECF 121-3, at 6.

[10] ECF 1.

[11] ECF 46.

[12] ECF 52.

- All documents concerning the City's third affirmative defense that its decisions were "based upon legitimate reasons."

- All documents concerning Maziar's termination, including but not limited to documents concerning the reason(s) for her termination and any written communications between and among any employees of the City related to the decision to terminate Maziar.

- All communications to or from Abdur-Rahim concerning Maziar's demotion or termination, or the decision-making leading to same.[13]

A month later, Abdur-Rahim left her job at the City and—notwithstanding the litigation hold and pending litigation—the City wiped her work phone of all data.[14] In January 2023, Abdur-Rahim upgraded her personal phone, which she claims resulted in the loss of all text messages on that phone as well.[15]

In September 2023, the City produced three text messages from Abdur-Rahim in response to Maziar's discovery requests. Relevant to Maziar's motion for sanctions is a single image of a text message from Carol Anderson (another former City employee) to Abdur-Rahim regarding concerns raised by Maziar at the April 29 meeting:

---

[13]  ECF 128-2, at 8–10.

[14]  ECF 139, at 3–4.

[15]  *Id.* at 6–7.



In her deposition, Abdur-Rahim admitted that she cropped this message to create the image that was produced during discovery.[16] She also testified that there were likely additional text messages regarding the April 29 meeting between herself and Anderson that she did not produce.[17] However, Abdur-Rahim did not recall receiving any additional messages from Anderson regarding Maziar's conduct.[18] The City no longer has access to any of Abdur-Rahim's text messages sent or received prior to January 2023.

---

[16]  ECF 121-2, ¶ 3. The Court can also identify that it is cropped based on the bottom two corners of the gray message bubble being squared off and not rounded like the top two corners.

[17]  ECF 114, at 213.

[18]  ECF 139, at 5–6.

5

The import of this message in terms of Maziar's claims and the City's defenses is subject to debate. The portion of the message provided by Abdur-Rahim appears to be a summary of the issues Maziar raised at the April 29 meeting. Maziar argues that the text supports her retaliation claim by providing evidence that Abdur-Rahim was aware, prior to firing Maziar, that Maziar was complaining about having been asked to do something unethical.[19] However, Maziar also believes that the remainder of this cropped message, as well as any other messages relating to the April 29 meeting, should have been preserved and produced.

Maziar thus sought sanctions based on the City's deletion of and failure to preserve and produce responsive text messages specifically with regard to the remainder of the cropped message and any relevant texts preceding or following it. As discussed in more detail below, the magistrate judge denied the motion. Maziar filed objections to the Order.

## II.   Legal Standard

Federal Rule of Civil Procedure 37(e) governs the loss of electronically stored information. It applies where (1) "electronically stored information that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it" and (2) that

---

[19]   ECF 125, at 16.

information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If both pre-conditions are met, a court can impose sanctions under Rule 37(e)(1) or, for more severe violations, 37(e)(2). The Eleventh Circuit recently clarified the difference between these two subsections in *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1302 (11th Cir. 2023). Rule 37(e)(1) focuses on prejudice to the non-spoliating party—where lost electronic evidence causes "prejudice to another party" a court should fashion a sanction "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Rule 37(e)(2) sanctions, by contrast, require a finding that "the party acted with the *intent to deprive* another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). This is the equivalent of bad faith in other spoliation contexts and is a higher standard than both negligence and gross negligence— bad faith "generally means destruction [of evidence] *for the purpose of hiding* adverse evidence." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (emphasis added) (citation omitted).

District courts are afforded broad discretion in determining whether to award spoliation sanctions. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Because it is inherently difficult to prove the probative value of lost or destroyed evidence, "the burden of proving prejudice is . . . left for the court's considered discretion." *Burns v. Medtronic, Inc.*, No. 8:15-CV-2330-T-

17TBM, 2017 WL 11633269, at *5 (M.D. Fla. Aug. 9, 2017). Appropriate sanctions may include an adverse judgment, the denial of a defendant's motion for summary judgment, issuing jury instructions that raise a presumption against the spoliator, or the exclusion of evidence. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011); *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1375 (N.D. Ga. 2008).

### III.   Discussion

A magistrate judge's order on a non-dispositive pretrial issue is subject to reversal if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). Undersigned respectfully finds that the magistrate judge clearly erred by considering only whether the City and Abdur-Rahim failed to preserve text messages regarding potential comparator evidence.[20] Narrowing the issue in this way resulted in a failure to consider whether the deleted text messages contained *other* information related to Maziar that potentially prejudiced her case. Undersigned finds no clear error with respect to the magistrate judge's determination that there was no bad faith on the City's part.

As an initial matter, the parties do not object to the magistrate judge's conclusion that both prerequisites under Rule 37 are met. Text messages that should have been preserved were not because of the City's failure to maintain

---

20   ECF 139, at 16.

them and those messages cannot be restored or replaced. Undersigned must then consider whether Maziar was prejudiced by this loss, thus warranting sanctions under Rule 37(e)(1), or whether the City *intended* to deprive Maziar of the evidence it destroyed such that more severe sanctions are warranted under Rule 37(e)(2). Undersigned will first consider whether more severe sanctions are warranted under Rule 37(e)(2).

### A. Bad-faith analysis

The magistrate judge correctly determined that Rule 37(e)(2) sanctions are not warranted because there was insufficient evidence to conclude that the City *intended* to deprive Maziar of any evidence.[21] The Order concludes that the City's actions were "quite careless" and grossly negligent, but not aimed at depriving Maziar of evidence supporting her claims.[22]

Maziar argues that the magistrate judge clearly erred in the application of *Skanska*. There, the plaintiff was sanctioned under Rule 37(e)(2) after a finding of bad faith because it deleted data from five of thirteen relevant phones subject to a litigation hold. 75 F.4th at 1302. The data was wiped for various and unknown reasons—two phones were deliberately reset according to Skanska's ordinary employee departure procedures when their owners left the company, one was

---

[21] *Id*. at 19–26.

[22] *Id*. at 24, 26.

somehow "disabled" and became inaccessible after the owner left Skanska, another was allegedly lost, and the final phone had all text messages deleted under "disputed circumstances." *Id*. The totality of the circumstances in *Skanska*, according to the district court, amounted to bad faith based on several factors. First, Skanska failed to inform the custodians of the litigation hold for at least seven months after it was put in place. *Id*. at 1313. Second, Skanska lied to the court by affirming that no documents related to the discovery requests had been deleted or destroyed before it had even checked whether the relevant cell phone data was available. *Id*. The Eleventh Circuit noted that, on a *de novo* review, whether Skanska's conduct amounted to bad faith would be a "close call," but on the clear error standard, it affirmed the district court's bad faith findings. *Id*.

This case is indeed similar to *Skanska*. But there are enough differences that undersigned does not find clear error in the magistrate judge's determination that the City did not act in bad faith. For example, unlike Skanska, the City did make *some* effort to produce text messages and other data. Further, it did not misrepresent any aspects of its discovery protocol or text message deletions to the Court like Skanska did. To the contrary, the City has been quite candid to the Court that it failed to preserve data that it should have. In light of these differences, undersigned finds no clear error in the magistrate judge's denial of bad faith sanctions.

Maziar also argues that the magistrate judge clearly erred by finding that the production of the cropped text message actually constituted *good* faith on the City's behalf.[23] That is not undersigned's reading of the Order. Judge Salinas simply noted that the City's disclosure of at least one text message that is arguably inculpatory suggests that the City was not intending to deprive Maziar of evidence. There is nothing clearly erroneous about this observation.

### B. Prejudice analysis

Undersigned does, however, find clear error in the magistrate judge's conclusion concerning prejudice under Rule 37(e)(1).

The Order notes that Maziar's motion is based on the City's production of "altered and cherry-picked" text messages and its destruction of "other contemporaneous text messages that would have allowed [her] to challenge the reasoning for her termination."[24] Then, the Order states that, during a discovery conference before the magistrate judge, which occurred prior to the filing of the spoliation motion, Maziar made clear that her "true concern with respect to spoliation relates to whether there were any messages concerning the conduct and statements of others who attended the [April 29 Meeting]."[25] Narrowing the

---

[23] ECF 140, at 17.

[24] ECF 139, at 16.

[25] *Id.*

11

consideration to the destruction of comparator evidence only, which appears nowhere in Maziar's motion, the Order concluded that (1) there was no reason to believe comparator evidence existed and (2) even if it had existed, Maziar did not request it as part of discovery and thus cannot have been prejudiced by its destruction.

Undersigned finds that the magistrate judge clearly erred by improperly narrowing the scope of Maziar's motion in this fashion. The Order rests its conclusion on two separate determinations, both of which focus only on the potential loss of texts concerning *others'* behavior at the April 29 meeting, i.e., the conduct of potential comparators. But after review of the transcript of the discovery conference before the magistrate judge, Maziar's spoliation motion and relevant briefing, the objections, and oral argument before undersigned, it is clear that Maziar was concerned about the loss of *any and all* texts regarding the April 29 meeting, not just comparator evidence. During the discovery conference before the magistrate judge, Maziar's counsel raised the issue of the City's failure to provide "communications about [Maziar] and what led to her termination . . . [which] absolutely should have been searched for, reviewed, saved and produced"[26] and that this concern arose once Maziar deposed Abdur-

---

[26] ECF 121-3, at 25.

Rahim and realized "there has got to be more."[27] Maziar's counsel began asking for the missing messages once she found out "that [the cropped text] was not an isolated message."[28] To be sure, Maziar's counsel is especially concerned about destroyed texts concerning other people's behavior at the meeting, but that concern is simply illustrative of the potential value of the destroyed text messages—it does not form the entire basis of the spoliation motion.

The breadth of Maziar's spoliation concerns was made clear both in her motion and at oral argument before undersigned. At argument, Maziar's counsel argued that the prejudice derives from the destruction of *any* messages related to the April 29 meeting, not just those concerning others' behavior. Maziar also argues that the loss of texts regarding the April 29 meeting prevents her from potentially impeaching witnesses at trial.[29] In her reply brief, Maziar notes that she cannot possibly "innately divine all the evidence that is now missing."[30] In undersigned's view, regardless of what Maziar's counsel suggested during the discovery conference before the magistrate judge ahead of filing the spoliation motion, the motion itself seeks sanctions based on prejudice resulting from the loss

---

[27] *Id.* at 26.

[28] *Id.* at 27.

[29] ECF 121-1, at 9.

[30] ECF 136, at 5.

of *all* messages about the April 29 meeting, the very least of which resulted from losing the remainder of the single cropped text message. Maziar is prejudiced by an inability to contextualize the cropped text or learn additional information from texts about the April 29 meeting that likely existed. Maziar has been prejudiced and sanctions are warranted.

    **C.**    **Sanctions**

After a finding of prejudice under Rule 37(e)(1), a court can fashion a remedy "no greater than necessary to cure the prejudice." Maziar has requested an adverse inference directing a jury to presume that the lost texts would have been unfavorable to the City.[31] It is undersigned's view that this requested remedy goes too far. Directing the jury to a negative inference would do more than what is necessary to cure the prejudice and would unfairly tip the scales in Maziar's favor.

The Court will, however, deny the City's motion for summary judgment as a sanction. This is narrowly tailored to cure the prejudice at this stage because the City's spoliation prevents Maziar from contextualizing the cropped text message and deprives Maziar of access to other evidence that may have created disputed issues of material fact. Summary judgment for the City is thus inappropriate.

---

[31]    ECF 121-1, at 13.

Maziar may also request additional prejudice-curing remedies via a motion *in limine* for trial purposes if she desires.

The Court also finds that monetary sanctions are appropriate. Maziar is entitled to the fees and costs she incurred in prosecuting the instant motion, before both the magistrate judge and undersigned, as well as those incurred in responding to the City's motion for summary judgment. *See Matter of In re Skanska USA Civ. Se. Inc.*, 340 F.R.D. 180, 191 (N.D. Fla. 2021); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 112 (2d Cir. 2002); *see also Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 114 (E.D.N.Y. 2012) (finding monetary sanctions appropriate for failure to preserve evidence).

## IV. Conclusion

Maziar's objections to the Order are **SUSTAINED IN PART and OVERRULED IN PART** [ECF 140]. The City's motion for summary judgment [ECF 108] is **DENIED**. Within 14 days of this Order, Maziar shall submit a declaration and evidence of her reasonable fees and costs incurred in prosecuting the spoliation motion and defending the City's motion for summary judgment. Within 14 days of Maziar's submission, the City may file a written opposition to the reasonableness of the amount sought, if appropriate. The parties are further **ORDERED** to file a joint proposed Pretrial Order within 30 days of entry of this Order. The parties are further **ORDERED** to file any necessary Leave of Absence

for the remainder of the calendar year on or before **June 17, 2024**. Trial will be scheduled thereafter without further notice.

**SO ORDERED** this 10th day of June, 2024.

_____
Steven D. Grimberg
United States District Judge